Alvin F. TONEY–EL, Plaintiff-Appellee,

v.

Gayle F. FRANZEN, Director of the Department of Corrections, James W. Fairman, Warden, and Paul Hosier, Record Officer Supervisor, Defendants-Appellants.

No. 84–3122.

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1985.

Decided Nov. 20, 1985.

Rehearing and Rehearing En Banc
Denied Jan. 15, 1986.

Thomas M. Schmidt, Atty. Gen. Office, Springfield, Ill., for defendants-appellants.

J. Steven Beckett, Reno, O'Byrne & Kepley, Champaign, Ill., for plaintiff-appellee.

Before COFFEY and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

Plaintiff-Appellee sued defendants-appellants under 42 U.S.C. § 1983 alleging that they violated his constitutional rights by allowing him to remain incarcerated for 306 days beyond his release date. The district court directed a verdict in favor of the appellee on the issue of liability and a jury awarded appellee $40,000. We reverse.

## I.

On August 19, 1976, a Cook County, Illinois, Circuit Court sentenced Appellee, Toney-El, to serve four concurrent prison terms of seven years to seven years and one day in the Illinois Department of Corrections. While serving that sentence, Toney-El pled guilty to an earlier charge pending against him, and on that charge, on September 24, 1979, Cook County Circuit Judge Garippo sentenced Toney-El to a ten-year term of imprisonment and gave him 2 years and 255 days credit for the time that he had served in the county jail since his arrest on that earlier charge.[1] An Illinois statute provided that the ten-year sentence was to run concurrently with the other four sentences. See Ill.Ann.Stat. ch. 38, § 1005-8-4(a) (Smith-Hurd 1982). Those four seven-year sentences expired in March 1980.

Effective February 1, 1978, Illinois changed the system by which it awarded good conduct credits to inmates. The new statute provided that "the prisoner shall receive one day of good conduct credit for each day of service in prison" and that "[e]ach day of good conduct credit shall reduce by one day the inmate's period of incarceration set by the court." See Ill. Ann.Stat. ch. 38, § 1003-6-3(a)(2) (Smith-Hurd Supp.1985). Taking into account the credits awarded by Judge Garippo and the statutory good conduct credits, the Department of Corrections determined that Toney-El had January 12, 1982 as a release date for the September 1979 ten-year sentence.

In late 1979 or early 1980, Toney-El began to question the manner by which his statutory good conduct credits were awarded. He wrote letters to Franzen, Director of the Department of Corrections, to the Governor of Illinois, to the Chicago Sun Times, and to Senator Adlai Stevenson.[2] He also spoke with Hosier, Supervisor of the Department of Corrections Record Office. Franzen advised Toney-El that a recalculation of his sentence would be made and that he ought to contact his correctional counselor to obtain verification of his sentence calculation. Hosier informed Toney-El that his statutory good-conduct credits had been awarded pursuant to the

---

[*] Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

[1] Toney-El received 68 days credit for time served from the date of his arrest, July 28, 1973, until October 4, 1973, the date he was released upon a finding of no probable cause. Further, Toney-El received 325 days credit for time served from the date he was arrested on indictment, August 7, 1974, until July 1, 1975, the date he was released upon the granting of his motion to dismiss. Finally, Toney-El received 1 year, 224 days credit for time he served from the date of the reversal of the order of dismissal, February 28, 1978, until September 24, 1979, the date he was sentenced.

[2] The record does not reflect whether Toney-El wrote to Senator Stevenson before or after filing his June 26, 1980 motion in the Cook County Circuit Court.

1978 law and that his projected release date was January 12, 1982.

On June 26, 1980, Toney-El filed a motion in the Cook County Circuit Court requesting that he receive credit on his ten-year sentence for the time that he had served on his four seven-year sentences. Judge Suria issued an order dated July 15, 1980 which stated that the previous sentencing orders "are to stand," that Toney-El "is to receive sentence credit on all of the above charges from March 2, 1976, from which time the defendant has been continuously in the custody of law enforcement officials," and that "this order is to be considered in effect as of September 24, 1979."

Pursuant to Judge Suria's order, the Department of Corrections determined that Toney-El's custody date was March 2, 1976 and that his release date was March 2, 1981. The Department of Corrections believed that the March 2, 1976 date in Judge Suria's order incorporated all credits previously awarded, including the 2 years, 225 days given by Judge Garippo. Appellant Hosier had the Department's legal staff confirm the new release date.

Toney-El, disagreeing that Judge Suria's order nullified the credits granted to him by Judge Garippo, sought habeas corpus relief in the federal district court, Central District of Illinois. The district court rejected the Department of Correction's interpretation of Judge Suria's order. The district court viewed Judge Suria's order as granting sentence credit from March 2, 1976 in addition to the credit granted to Toney-El by Judge Garippo. The district court determined that Toney-El's release date was either June 23, 1978, or February 2, 1980, depending upon whether Judge Suria intended to supplant the credit Judge Garippo gave for time served since February 1978. *See* note 1, *supra* at 2. This Court affirmed the district court's decision. *Toney v. Franzen*, 687 F.2d 1016 (7th Cir. 1982).

Toney-El then filed the present action under 42 U.S.C. § 1983 seeking damages for, among other things, false imprisonment. The complaint named Franzen, Director of the Illinois Department of Corrections, Fairman, Warden of the Pontiac Correctional Center, and Hosier, Record Office Supervisor of the Pontiac Correctional Center, as defendants. He amended his complaint to base the false imprisonment claim upon the fifth, thirteenth and fourteenth amendments. The case went to trial before a jury. At the close of the evidence, the district court directed a verdict for the appellees on Toney-El's thirteenth amendment claim and for Toney-El on the issue of liability on the due process claim under the fifth and fourteenth amendments. The jury awarded Toney-El $40,000. Franzen, Fairman and Hosier appeal.

## II.

The initial inquiry in every 42 U.S.C. § 1983 action

must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *see also Coleman v. Frantz*, 754 F.2d 719, 722 (7th Cir.1985) (quoting *Parratt*). The appellants clearly acted under color of state law when they calculated Toney-El's release date and Toney-El clearly had a constitutionally protected liberty interest in being released from prison before the end of his term for good behavior. *McKinney v. George*, 726 F.2d 1183, 1189 (7th Cir.1984) (citations omitted).

The district court decided that the appellants had denied Toney-El due process by incorrectly calculating his release date. Toney-El frames the issue as one of substantive due process while the appellants contend that it is one of procedural due process. Our next inquiry considers which form of due process applies to the instant case, because, "if substantive constitutional rights are violated, the constitutionally recognized deprivation is complete at the time

of the action, irrespective of the procedures available before or after the deprivation." *Hicks v. Feeney,* 596 F.Supp. 1504, 1512 (D.Del.1984).

" 'Substantive due process' is a shorthand for the fact that the Supreme Court has interpreted the due process clause of the Fourteenth Amendment to confer certain substantive rights based mainly on the Bill of Rights." *Brown v. Brienen,* 722 F.2d 360, 366 (7th Cir.1983). Those substantive rights include the specific guarantees in the Bill of Rights as well as "penumbras, formed by emanations from those guarantees that help give them life and substance." *Griswold v. Connecticut,* 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). These penumbras embody

> "a conception of fundamental justice." ... [They] protect[ ] against state transgression only those personal immunities that are "implicit in the concept of ordered liberty," ... leaving a state "free to regulate the procedure of its courts in accordance with its own conception of policy and fairness, unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."
> ...
> "Fundamental rights," implicit in the concept of ordered liberty, include the rights to vote, ... the right of association, ... the right of access to the courts, ... and assorted freedoms against state intrusion into family life and intimate personal decisions, ....

*Sotto v. Wainwright,* 601 F.2d 184, 190–91 (5th Cir.1979) (citations omitted).

▪ The Bill of Rights does not specifically guarantee Toney-El the right to an early release from prison, nor does his alleged substantive right fall within one of the penumbras formed by the emanations from the specific guarantees in the Bill of Rights. Toney-El simply has no substantive due process right to an early release from prison.

## III.

Our inquiry does not end here because a person may be deprived of procedural due process without being deprived of substantive due process. As noted above, Toney-El had a constitutionally protected liberty interest in being released from prison before the end of his term for good behavior. *McKinney,* 726 F.2d at 1189. To prove a violation of procedural due process, Toney-El must show that: (1) the deprivation occurred; (2) that the deprivation occurred without due process of law; and, (3) that the defendants subjected him to the deprivation. *Bigby v. City of Chicago,* 766 F.2d 1053, 1056 (7th Cir.1985); *Hicks,* 596 F.Supp. at 1508. In the instant case, no questions arise as to the first and third components; therefore, this Court must focus on the second element of Toney-El's case, that is, whether Toney-El's deprivation of liberty occurred without due process of law.

▪ Due process " 'calls for such procedural protection as the particular situation demands.' " *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). In this particular situation, Toney-El challenges the mistaken interpretations of the orders written by Judge Garippo and Judge Suria and the resulting erroneous calculation of his custody and release dates. In section 1983 actions challenging the mistakes made by state employees rather than the state procedures by which those mistakes were made, *Parratt* requires a court " 'to consider the adequacy and availability of remedies under state law before concluding that a deprivation of life, liberty, or property violates due process of law'...." *Guenther v. Holmgreen,* 738 F.2d 879, 882 (7th Cir.1984) (quoting *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 871 (7th Cir.1983)); *see also Logan v. Zimmerman Brush Company,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (*Parratt* reaches challenge to state agency's error, but does not reach challenge to the established state

procedure underlying that error). The fundamental requirement of due process is a meaningful hearing at a meaningful time. *Parratt*, 451 U.S. at 540, 101 S.Ct. at 1915.

■ In the instant action, Toney-El could have informally informed prison officials about the error in calculating his release date through correspondence. Toney-El also had the right to seek a writ of mandamus from the state court to correct the error.[3] *See* Ill.Stat.Ann. ch. 110, § 14–101 to –109 (Smith-Hurd 1984). Finally, Toney-El had a cause of action in the Illinois courts for false imprisonment. *See Fort v. Smith*, 85 Ill.App.3d 479, 40 Ill.Dec. 886, 407 N.E.2d 117 (1980); *Karow v. Student Inns, Inc.*, 43 Ill.App.3d 878, 2 Ill.Dec. 515, 357 N.E.2d 682 (1976). Because Illinois law and the informal procedures of the Department of Corrections provided Toney-El with remedies that were both adequate and available, Toney-El has failed to allege a violation of the Due Process Clause of the fourteenth amendment. *Parratt*, 451 U.S. at 543–44, 101 S.Ct. at 1916–17.

## IV.

To the extent that Toney-El challenges the state procedures underlying the calculation error, *Parratt* does not apply. *Logan*, 455 U.S. at 436, 102 S.Ct. at 1158. Such a challenge requires that we examine those underlying procedures to determine whether Toney-El received an "opportunity to be heard 'at a meaningful time and in a meaningful manner' " before being denied his liberty. *Mathews v. Eldridge*, 424 U.S. at 333, 96 S.Ct. at 902 (citations omitted). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Cleveland Board of Education v. Loudermill*, — U.S. —, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (citation omitted). The instant case asks whether the procedures surrounding the opportunity to be heard afforded to inmates who contest the calculation of their release dates is sufficient to meet the requirements of the due process clause.

> In any situation, the identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903 (citation omitted).

First, the calculation of Toney-El's release date affected 306 days of Toney-El's liberty. Obviously, Toney-El had a strong interest in his liberty.

Second, in general, the risk of erroneous deprivation through the procedures used seems negligible. On September 24, 1979, a judge, as part of a judicial process, originally calculated Toney-El's credit for time that Toney-El had served relative to his arrest on the charge underlying his conviction and ten-year sentence. *See* note 1, *supra* at 2 and accompanying text. Between one and two weeks later, the Department of Corrections, taking into account the credits awarded by the judge, calculated Toney-El's custody date and, after giving Toney-El the automatic day-for-day good conduct credits on his sentence, the Department calculated Toney-El's release date. In late 1979 or early 1980, Toney-El corresponded with Department of Corrections officials challenging the award of his good conduct credits. When he discovered that those credits were properly calculated, he filed a motion in the state court seeking credit for time served prior to his conviction and ten-year sentence in addition to

---

**3.** The Department of Corrections and Illinois law afforded Toney-El these two remedies prior to the deprivation of his liberty. He, however, properly utilized those remedies after the deprivation. We therefore consider them in our analysis under *Parratt*.

that awarded by Judge Garippo. As part of another judicial proceeding, Judge Suria, on July 15, 1980, set Toney-El's custody date as March 2, 1976 and obscurely addressed the credits previously awarded by Judge Garippo. On July 29, 1980 and pursuant to Judge Suria's order, the Department of Corrections recalculated Toney-El's release date. Toney-El then sought a writ of habeas corpus.

Toney-El has not suggested any additional or substitute procedural safeguards which may have prevented the mistake made in his case. The Ninth Circuit has recently held that any time an inmate's release date is recalculated and extended, the inmate must be afforded a hearing. By "hearing" the Ninth Circuit apparently means a proceeding of relative formality including witnesses and evidence. *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985) (en banc) (11–0 decision). We disagree.

Procedural due process does not require a full blown adversarial hearing in every situation. *See, e.g., Califano v. Yamasaki*, 442 U.S. 682, 695–97, 99 S.Ct. 2545, 2554–56, 61 L.Ed.2d 176 (1979) (requests for reconsideration of overpayment determination under 42 U.S.C. § 404(a) involve relatively straightforward matters of computation for which written review is adequate); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir.1984) (hearing not necessary before court approval of a settlement of a class derivative action where appellant afforded opportunity to submit written memorandum detailing his objections to the settlement); *Sullivan v. Carignan*, 733 F.2d 8 (1st Cir.1984) (hearing not necessary where facts not in dispute). In Illinois, a judge initially determines the amount of credit an inmate receives at a judicial proceeding which presumptively satisfies the due process clause. The Department of Corrections then makes two purely mathematical calculations to determine an inmate's custody and release dates. An inmate may challenge those calculations through correspondence. The purely mathematical nature of these calcu-

lations makes written review an adequate opportunity to be heard for purposes of the due process clause. That an error in calculation may occur in a rare and isolated case, such as the instant one, does not matter, because "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." *Mathews v. Eldridge*, 424 U.S. at 344, 96 S.Ct. at 907.

Finally, the Department of Corrections has an interest in mathematically calculating custody and release dates. The function involves a mere mathematical application of credits awarded by a judge and credits awarded by statute. An additional or substitute administrative hearing, such as that contemplated by *Haywood*, would entail substantial administrative and fiscal burdens through the expenditure of time and the use of personnel to evaluate a mathematical calculation and would provide little additional protection to an inmate than the present procedure provides.

While we abhor the mistake and deprivation involved in the instant case, we believe such instances to be rare and the exception to the general rule. Nothing in the record indicates otherwise. Therefore, we conclude that the Illinois Department of Corrections' method of reviewing challenges to the calculation of custody or release dates satisfies the dictates of procedural due process.

### Conclusion

The decision of the district court directing a verdict in favor of Toney-El is Reversed, and this case is Remanded for the entry of an order consistent with this opinion.