**Robert HAYNES, Plaintiff,**

v.

**Betty LAMBOR, et al., Defendants.**

**No. 89 C 8393.**

United States District Court,
N.D. Illinois, E.D.

Feb. 4, 1992.

Robert Haynes, pro se.

Janice Lynne Schaffrick, Illinois Atty. General's Office, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Robert Haynes brings this action pursuant to 42 U.S.C. § 1983 against several employees of the Illinois Department of Corrections. Haynes claims that defendants deprived him of liberty without due process of law by subjecting him to excessive discipline and causing him to remain in punitive segregation for nineteen days longer than provided for in the prison regulations. This matter is now before the court on defendants' motion for summary judgment, in which defendants contend that Haynes's claim is moot; and that Haynes was not deprived of due process. Haynes has filed a response to defendants' motion.

**1.** Unless otherwise indicated, all the events detailed in this opinion occurred in 1989.

**2.** Rule 301 prohibits: "[u]nauthorized fighting with another consenting person, which is not likely to cause serious bodily injury to one or the other, and which does not involve the use of a weapon."

### Facts

The undisputed facts are as follows. On September 4, 1989,[1] Haynes received a disciplinary report for violating Rule 301– Fighting,[2] and was taken immediately to the segregation unit of the Pontiac Correctional Center. On September 11, Haynes appeared before the Pontiac Adjustment Committee, and was found guilty of violating Rule 301. Haynes was sentenced to three months' revocation of good time credits, three months' demotion to C–grade status, and three months' segregation. On September 12, Haynes was transferred to the segregation unit of the Stateville Correctional Center, where he learned that the Pontiac Adjustment Committee had sentenced him to too much time for a Rule 301 violation. According to Department of Corrections Rules, a Rule 301 violation carries a maximum penalty of one month across the board.

On September 13, Haynes sent a letter to Warden O'Leary of Stateville informing him of the discrepancy in his sentence. On September 20, assistant warden Salvador Godinez wrote Haynes to tell him that, if he received no further disciplinary tickets, he would be released from segregation "in one month."[3] Godinez further advised Haynes that he should file a grievance over the other discipline he received (revocation of good time and demotion to C–grade status). On September 29, Haynes filed his first grievance with the Institutional Grievance Board. This grievance was returned to Haynes because he did not use the proper grievance form. On October 9, Haynes wrote a letter to Godinez, telling him that he (Haynes) had not received any disciplinary tickets, and that he should therefore be released from segregation on October 11.[4] On October 12, Haynes filed a second grievance. On October 20, Haynes wrote a third letter concerning his punishment, and sent copies of the letter to various prison

**3.** In his letter, Godinez does not tell Haynes the date on which he will be released.

**4.** Actually, Haynes's release date should have been October 4. The parties do not dispute this.

officials. On October 23, Haynes was released from segregation.

On November 3, the Institutional Grievance Board responded to Haynes's grievance by noting that Haynes had been released from segregation on October 23, and advising Haynes to file a grievance regarding restoration of good time with the Administrative Review Board in Springfield. In a letter dated November 7, Warden O'Leary directed the Record Office Supervisor to ensure that Haynes's records reflect the appropriate discipline of one month segregation and one month's C-grade. O'Leary made no mention of good time credits. O'Leary also directed that Haynes be paid at the unassigned rate of pay for the period of October 4 through 24. Haynes's trust fund transaction record reflects that $7.14 was deposited into his prison trust account on November 13. On December 4, the Administrative Review Board adjusted Haynes's records to reflect one month's revocation of good time credits.

Neither party disputes the above described facts. Haynes claims, however, that, despite Warden O'Leary's November 7 directive, Haynes remained on C-grade status until February or March, 1990.[5] Haynes also claims that he should be compensated for the extra time he spent in segregation.

## Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is suffi-

cient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Once the moving party has sustained its initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. The court must then view the entire record in the light most favorable to the nonmoving party. *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988).

## Analysis

In every Section 1983 action, the plaintiff must prove that the conduct complained of 1) was committed by a person acting under color of state law; and 2) deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). There is no dispute that all defendants acted under color of state law. The remaining issue is whether, by giving Haynes an excessive sentence, keeping him in segregation for an extra nineteen days, and subjecting him to *de facto* C-grade status for an extra two months, defendants deprived Haynes of his rights under the Constitution or laws.[6]

■ The first question in this case is whether the defendants on the Pontiac Adjustment Committee violated Haynes's constitutional rights by sentencing him to three months across the board for violating Rule 301. There is no question that the Adjustment Committee members violated Rule 301 itself, which provides for a penalty of no more than one month across the board. However, violations of state law or regulations are not cognizable under Section 1983. *Archie v. City of Racine*, 847

---

**5.** Although Haynes's records reflect that he only received one month's demotion to C-grade, Haynes claims that he was subject to C-grade restrictions until February or March. For example, Haynes claims he could only visit the commissary once a month, and that he was only allowed to spend thirty dollars. Haynes does not describe any further restrictions.

**6.** Since Haynes's good time was restored to him, any claim arising out of the deprivation of good time is now moot.

F.2d 1211, 1217 (7th Cir.1988) (en banc), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). Unless the members of the Adjustment Committee violated Haynes's constitutional rights, they are entitled to judgment as a matter of law.

 In certain instances, courts have held that "punishment which is disproportionate to the offense committed constitutes cruel and unusual punishment" in violation of the Eighth Amendment. *Adams v. Carlson,* 488 F.2d 619, 635–36 (7th Cir.1973). *See e.g. Chapman v. Pickett,* 586 F.2d 22, 27 (7th Cir.1978) (segregation for nearly seven months manifestly disproportionate to the offense of failing to perform work as instructed, especially when refusal was based on religious grounds); *Black v. Brown,* 524 F.Supp. 856, 858 (N.D.Ill.1981) *aff'd. in part without opinion and rev'd. in part without opinion* 688 F.2d 841 (7th Cir.1982) (eighteen months segregation for running in the prison yard found excessive). However, a violation of the Eighth Amendment requires a showing of a culpable mental state on the part of prison officials. *See McGill v. Duckworth,* 944 F.2d 344 (7th Cir.1991). A simple error in the calculation of punishment will not violate the Eighth Amendment. *See Sample v. Diecks,* 885 F.2d 1099, 1108–09 (3rd Cir.1989) (error in calculation of release date does not violate the Eighth Amendment). Accordingly, unless the evidence supports an inference that the members of the Adjustment Committee intentionally gave Haynes an excessive sentence, they cannot be found to have violated the Eighth Amendment.

 Courts have also addressed issues of excessive discipline under the Due Process Clause of the Fourteenth Amendment. *See e.g. Adams v. Carlson, supra; Black v. Brown, supra.* In *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 2979–80, 41 L.Ed.2d 935 (1974), the Supreme Court outlined certain due process requirements for prison disciplinary proceedings, including advance written notice of the charges, a limited right to call witnesses, and a written statement of the factfinder. Haynes does not claim he was denied any of these rights, however, but rather claims that the Adjustment Committee purposely gave him an excessive sentence. The Adjustment Committee members claim the excessive sentence was the result of an error. Like the analysis under the Eighth Amendment, a simple error in the calculation of punishment will not violate due process. *See Toney–El v. Franzen,* 777 F.2d 1224, 1229 (7th Cir.1985), *cert. denied, Toney–El v. Lane,* 476 U.S. 1178, 106 S.Ct. 2909, 90 L.Ed.2d 994 (1986) (error in calculating release date did not violate due process); *Abernathy v. Perry,* 869 F.2d 1146, 1148 (8th Cir.1989) (inadvertent failure to give segregated prisoner notice of extensions of segregation did not violate due process). As the Supreme Court stated in *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), the Due Process Clause of the Fourteenth Amendment "is not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Accordingly, whether the court analyzes this case under the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment, the issue is whether the record contains sufficient evidence to support an inference that the Adjustment Committee purposely gave Haynes an excessive sentence.

The members of the Adjustment Committee who sentenced Haynes on September 11, Thomas Huskisson, Albert Esquivel, and Freda Butler, all filed affidavits which state that they inadvertently sentenced Haynes to three months across the board because they mistakenly believed that Haynes was guilty of the more serious offense of "assaulting any person." [7] These defendants claim their confusion was caused by statements in the Adjustment Committee investigative report and the incident report that indicated that the degree of physical confrontation between the in-

---

**7.** Rule 102–Assaulting Any Person provides for a maximum one year across the board penalty for "[c]ausing a person or an object to come in contact with another person in an offensive, provocative or injurious manner, or fighting with a weapon."

mates was more serious than that required under the lesser offense of "fighting." The Adjustment Committee investigation report provides, among other things, that one correctional officer saw Haynes "hit inmate Timmons in the head," and that another correctional officer "saw inmate Haynes assault inmate Timmons." The incident report, prepared by Sergeant Morgan, states that, as Morgan was responding to a fight, he "observed res[ident] Haynes assaulting res[ident] Timmons," and that Morgan and another correctional officer "restrained res[ident] Haynes from further assaulting res[ident] Timmons." The disciplinary report, prepared by correctional officer Thaddeus J. Hawkins, provides that Haynes and Timmons were "engaged in a fist fight," and that Hawkins assisted in breaking up the fight "along with [officer] Lane and a host of [correctional officers] and [white] shirts." The report further provided that Haynes was immediately taken to temporary confinement due to "the seriousness of the offense."

Haynes claims that the Adjustment Committee members could not have been mistaken because the disciplinary report and Adjustment Committee summary clearly state that Haynes is being charged with Rule 301–Fighting, and the Adjustment Committee members specifically asked him during the hearing: "are you aware that you have been charged with 301 fighting and could receive as punishment segregation time, loss of good time, and C–grade?" Based upon the evidence in the record, however, the court finds nothing to suggest that the excessive sentence was the result of anything more than an error. Although it is true that both the disciplinary report and Adjustment Committee summary provide that Haynes is being charged with violating Rule 301, the repeated references in the investigatory materials to "assault," as well as the description of how many correctional officers were required to break up the altercation and the notation that Haynes was taken to temporary confinement because of the "seriousness" of the offense, all support a finding that the Adjustment Committee simply erred in its calculations. Indeed, all of the documentation presented against Haynes at his disciplinary hearing seems to indicate that Haynes was the aggressor in the altercation between himself and inmate Timmons. That the Adjustment Committee reminded Haynes during the hearing that he was being charged with violating Rule 301 and that such a violation carries a penalty of segregation, revocation of good time credits, and demotion to C–grade, does not show intent because both violations (fighting and assaulting any person) carry such a penalty. The difference is simply one of degree.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ..." before trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553. The procedure is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole ...." *Id.* at 327, 106 S.Ct. at 2555. While courts should be cautious in granting summary judgment where intent is at issue, "even where such issues as motive or intent are at stake, summary judgment is proper 'where plaintiff presents no indication of motive or intent supportive of his position.'" *Powers v. Dole*, 782 F.2d 689, 694 (7th Cir.1986) *quoting Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985). In this case, Haynes will be able to produce no additional evidence of intent at trial other than what he has provided the court in his response to the motion for summary judgment. Haynes does not claim that the Adjustment Committee members had any particular motive to sentence him beyond the period required under Rule 301. Nor does he claim that he raised the issue of excessiveness at the hearing before the Adjustment Committee. In fact, Haynes did not realize he was sentenced beyond the limits of Rule 301 until several days later. Although the Adjustment Committee members "should have known" that Rule 301 carried only a one month penalty, such a finding is not sufficient to meet the specific requirements of the Constitution. Accordingly, the court finds that the evidence in

the record does not support an inference that the members of the Adjustment Committee intentionally gave Haynes an excessive sentence. The court therefore grants defendants' Thomas Huskisson, Albert Esquivel, and Freda Butler's motion for summary judgment.

■ The next issue is whether the remaining defendants violated Haynes's constitutional rights by causing him to remain in segregation for nineteen days beyond his scheduled release date. The court notes at the outset that the Due Process Clause does not in and of itself create a liberty interest in avoiding segregation. *Hewitt v. Helms*, 459 U.S. 460, 467–68, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) ("administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."). Nor does Haynes have a state created liberty interest in remaining in the general prison population. *Cain v. Lane*, 857 F.2d 1139, 1144–45 (7th Cir.1988). Still, assuming Haynes has some protected interest in being released from segregation in a timely fashion, the court finds that defendants did not deprive Haynes of the due process of law.

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. at 558, 94 S.Ct. at 2976, *citing Dent v. West Virginia*, 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889). Where protected interests are at stake, due process "calls for such procedural protection as the particular situation demands." *Matthews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). It "is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Id.*, *quoting Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). In the instant case, due process required a relatively prompt resolution of Haynes's situation in light of the particular circumstances surrounding the incident. The court finds that Haynes received a fairly prompt remedy. There is no indication in this case that defendants ignored Haynes's requests to be released from segregation. *Compare*

*Sample v. Diecks*, 885 F.2d at 1115–16 (due process violation where official essentially ignored prisoner's complaint that he was being held in prison beyond his scheduled release date); *Smith v. Rowe*, 761 F.2d 360, 368–69 (7th Cir.1985) (liability of Director of Department of Corrections established where evidence indicated that he had knowledge of extensive segregation of inmate and did nothing about it). Although they could have acted faster, the court notes that the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. at 566, 94 S.Ct. at 2980. Since defendants acted reasonably quickly to release Haynes from segregation, the court finds that the incidental delay in processing Haynes's complaint did not amount to a due process violation.

■ Finally, Haynes claims that, despite Warden O'Leary's instruction to the contrary, Haynes was kept on C–grade status for three months. Although this may be true, Haynes does not establish that defendants had any knowledge of Haynes's *de facto* C–grade status. An individual can be held liable under Section 1983 only if "he caused or participated in an alleged constitutional deprivation." *See Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986) *quoting Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). At the very least, it must be shown that the alleged deprivation occurred "at [the official's] direction or with her knowledge and consent." *Smith v. Rowe*, 761 F.2d at 369. Once O'Leary ordered Haynes taken off C–grade, he had remedied the situation as far as he was concerned. If Haynes was being subjected to the continued restrictions of C–grade status, he should have filed a grievance, or in some way notified prison officials. Defendants cannot be held liable for a deprivation they did not know about.

### Conclusion

For all the foregoing reasons, defendants' motion for summary judgment is granted, dismissing this case in its entirety.