46 F.3d 1134
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Melvin WARREN, Plaintiff-Appellant,
v.
Dr. Tyrone HOLLERAUER and Dr. Chawla, Defendants-Appellees.
 No. 94-1359.
 United States Court of Appeals, Seventh Circuit.
 Argued: Nov. 7, 1994.
Decided: Jan. 20, 1995.
 
 Before COFFIN,* CUDAHY and ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Appellant Melvin Warren was found not guilty of murder by reason of insanity and placed into the custody of the Illinois Department of Mental Health and Developmental Disabilities at the Elgin Mental Health Center in June 1992. He brought this civil rights suit under 42 U.S.C. Sec. 1983 for money damages and an injunction, claiming that his right to due process has been violated because the defendant state psychiatrists failed to take steps to obtain his discharge from the facility even though they have not diagnosed him as a danger to himself or others.
 
 
 2
 We agree with the district court's decision to dismiss this case substantially for the reasons it expressed. The court relied on Easter House v. Felder, 910 F.2d 1387 (7th Cir. 1990) (en banc), in which this court applied the doctrine first developed in Parratt v. Taylor, 451 U.S. 527 (1981), limiting claims under Sec. 1983 to "those deprivations which actually occur without adequate due process of law, such as those which result from a state's conscious decision to ignore the protections guaranteed by the Constitution." 910 F.2d at 1404 (emphasis in original). Under this doctrine, when the challenged deprivation arises from a state employee's unilateral failure to follow procedures established by the state to protect the plaintiff, and adequate post-deprivation relief is available, there is no due process violation. See Guenther v. Holmgreen, 738 F.2d 879, 882 (7th Cir. 1984) ("a victim of a property or liberty deprivation who has recourse to an adequate state remedy has not been denied 'due process of law"').
 
 
 3
 The district court accepted as true Warren's allegations that the defendants wrongly had failed to seek his release, but concluded that the conduct challenged "is clearly the kind of random, unauthorized conduct that does not represent the 'state's conscious decision' to deprive Warren of his liberty without due process." This is so because the state had in place a system -- with which the defendants allegedly did not comply -- for evaluating an individual's readiness for discharge from a mental health facility.[1] Cf. Zinermon v. Burch, 494 U.S. 113 (1990) (finding due process violation where state officials charged with the power to deprive mental patients of their liberty and the duty to implement procedural safeguards failed to initiate such protections).[2] The question therefore became whether adequate post-deprivation procedures exist.
 
 
 4
 The court found that they do. It ruled that a provision in the Illinois statutory scheme giving an individual the right to petition for his own release provides a satisfactory remedy for deprivations caused by the facility staff's unauthorized failure to follow the other procedures that could have led to his release. See 730 ILCS 5/5-2-4(e). Warren's appeal targets the adequacy of this relief. He points out that, if he petitions the court himself, he must shoulder the burden of proving his readiness for release, but that, if the facility director petitions the court, the State would bear the burden of showing that he should continue to be held. Id. at 5/5-2-4(g). He contends that the difference in his status as a result of the differing burdens "is that of night and day," and suggests that the only meaningful remedy would be to require the facility director and psychiatrists to act on his behalf.
 
 
 5
 We recognize that showing eligibility for release is more difficult for Warren when he bears the burden than when he does not, and that the liberty interest at stake is an important one. We can acknowledge, as well, that it might be fairer to leave the burden of proof on the State when a defendant is able to show that he was forced to petition for his own release because the facility director and other staff had avoided their statutory obligations to do so.
 
 
 6
 The relevant inquiry, however, is not whether the State has devised the best or fairest system, but whether
 
 
 7
 the remedy which an injured party may pursue in state court can readily be characterized as inadequate to the point that it is meaningless or non-existent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment.
 
 
 8
 Easter House, 910 F.2d at 1406.
 
 
 9
 The statutory remedy available to Warren is hardly so deficient that it could be characterized as "meaningless" or "non-existent." His right to petition for his own release is accompanied by a statutory right to counsel and to an independent psychological examination, see 730 ILCS 5/5-2-4(c), (f), and the evidence must be presented in open court with the right of confrontation and cross-examination, id. at 5/5-2-4(g). These provisions give assurance that the adjudication will be sufficiently fair and accurate. See Heller v. Doe by Doe, 113 S.Ct. 2637, 2649 (1993) ("[T]he interest of a person subject to governmental action is in the accurate determination of the matters before the court, not in a result more favorable to him.")
 
 
 10
 Additionally, as the defendants point out, it appears that Warren could challenge his confinement and seek damages through a state tort claim for false imprisonment. See Hood v. City of Chicago, 927 F.2d 312, 314 (7th Cir. 1991); Toney-El v. Franzen, 777 F.2d 1224, 1228 (7th Cir. 1985); Rodgers v. Lincoln Towing Service, Inc., 771 F.2d 194, 199 (7th Cir. 1985). See also Yang v. Hardin, 37 F.3d 282, 286 (7th Cir. 1994) ("'False imprisonment consists of an unlawful restraint, against his will, of an individual's personal liberty or freedom of locomotion."') (quoting Dutton v. Roo-Mac, Inc., 100 Ill. App.3d 116, 55 Ill. Dec. 458, 461, 426 N.E.2d 604, 607 (1981)). Warren also may be able to seek a writ of mandamus to require defendants' compliance with the statutory procedures. See 735 ILCS 5/14-101-109; Toney-El, 777 F.2d at 1228.
 
 
 11
 Surely, this access to meaningful postdeprivation relief is sufficient to satisfy the requirements of due process in these circumstances. Accordingly, we affirm the district court's judgment of dismissal.
 
 
 
 *
 The Honorable Frank M. Coffin, Senior Circuit Judge of the First Circuit, is sitting by designation
 
 
 [1]
 The statute provides that within 30 days after a defendant subject to involuntary admission enters the facility, and every 60 days thereafter, the facility director must file with the court a treatment plan that includes an evaluation of the defendant's progress and the extent to which he is benefiting from treatment. 730 ILCS 5/5-2-4(a)(1)(A), (b). When the facility director determines that the defendant is no longer subject to involuntary admission or in need of mental health services on an inpatient basis and either may be conditionally released, discharged or no longer placed in a secure setting, the facility director must notify the State's attorney, the court and defense counsel. Within 30 days of such notification, the court must hold a hearing and make a finding on the appropriate action. Id. at 5/5-2-4(d). Although the provisions do not explicitly state that the facility director must determine following each evaluation whether it is time to recommend a hearing on a possible change in the defendant's status, we conclude that it is implicit within the scheme as the only logical purpose for the periodic reviews of the defendant's progress
 
 
 [2]
 In Zinermon, the plaintiff alleged that he was denied due process when hospital staff members admitted him to the facility using the procedure for voluntary admission when they knew or should have known that he was incapable of giving informed consent. The Court found that the defendants' alleged conduct was not "a 'random, unauthorized' violation of Florida law," but a foreseeable deprivation "by the very state officials charged with the power to deprive mental patients of their liberty and the duty to implement procedural safeguards." 494 U.S. at 138. In other words, the Court ruled that the Zinermon defendants could have, and should have, initiated procedures to ensure that those who are unable to give consent, as well as those who are unwilling, are afforded the extra protections associated with involuntary placement
 In this case, in contrast, the alleged problem is not the failure to initiate appropriate safeguards, but the defendants' failure to follow established procedures. Because it is impossible to predict when individual employees will ignore explicit obligations, the State is not in a position to provide predeprivation process in such a situation. See generally Zinermon, 494 U.S. at 135-139; Easter House, 910 F.2d at 1400-1402.