James ALLEN, Plaintiff-Respondent,

v.

Juan GUERRERO, Jodi Voegeli, Jodi Tessman, Stephanie Hove, Donna Mueller and one or more John Does, in their individual capacities, Defendants-Appellants.

Court of Appeals

*No. 03–1356. Submitted on briefs February 11, 2004.—Decided September 16, 2004.*

2004 WI App 188

(Also reported in 688 N.W.2d 673.)

681

On behalf of the defendants-appellants, the cause was submitted on the briefs of *John J. Glinski*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeff Scott Olson*, of *The Jeff Scott Olson Law Firm, S.C.*, Madison.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. DEININGER, P.J. Several Department of Corrections (DOC) employees appeal an order denying their motion to dismiss this action, which James Allen filed against them under 42 U.S.C. § 1983. The defendants contend they are entitled to qualified immunity from Allen's claim that they violated the Eighth Amendment's prohibition against cruel and unusual punishment by deliberately refusing to release him on parole for 377 days beyond his mandatory release (MR) date. The defendants maintain that, because federal courts were divided on whether the alleged conduct constituted a violation of the Eighth or the Fourteenth Amendments, the trial court erred by concluding that it was "clearly established" at the time Allen reached his MR date that retaining him in prison violated the U.S. Constitution.

¶ 2. We conclude that a 42 U.S.C. § 1983 defendant is not entitled to qualified immunity when, even if there was some uncertainty in the law regarding pre-

cisely which constitutional provision was violated, the law nonetheless clearly established that the defendants' alleged conduct violated the U.S. Constitution. We also conclude that, at the time Allen reached his MR date, the law clearly established that deliberately holding a person in prison beyond a statutorily prescribed release date violates a right guaranteed by the U.S. Constitution. Accordingly, we affirm the appealed order permitting Allen's Eighth Amendment claim to proceed.

## BACKGROUND

¶ 3. The following facts are taken from the allegations set forth in Allen's amended complaint, which, for purposes of a motion for judgment on the pleadings, we must accept as true. *Penterman v. Wisconsin Elec. Power Co.*, 211 Wis. 2d 458, 468, 565 N.W.2d 521 (1997).

¶ 4. After serving two-thirds of an eight-year sentence for sexual assault, Allen reached his MR date on January 4, 2000.[1] The DOC was unable to secure appropriate housing for Allen and, instead of releasing him on parole, the department moved him to a minimum security prison and placed him under the supervision of parole agents. In April 2000, Allen's parole agents initiated a "parole hold pending a parole revocation hearing," placed him under arrest, and transferred him to a maximum security prison. In September of that same year, an administrative law judge concluded that Allen had not been released to parole, was not a

[1] Pursuant to Wis. Stat. § 302.11 (2001–02), "an inmate who is serving a sentence for a serious felony committed on or after April 21, 1994, but before December 31, 1999" is entitled to a mandatory release on parole after serving two-thirds of his or her sentence. Section 302.11(1), (1g)(am). All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

parolee, and therefore could not be found to have violated his parole. This ruling was upheld on administrative appeal.

¶ 5. Allen nonetheless remained in custody. At the end of October, the DOC again sought to revoke Allen's parole. An administrative law judge again held that a parole revocation was inappropriate because Allen was never released from prison to parole. Allen, still in custody, then petitioned the Dane County Circuit Court for a writ of habeas corpus. The court granted the writ and ordered Allen released to parole, which occurred on January 17, 2001, some 377 days after he had reached his MR date.

¶ 6. Allen commenced this 42 U.S.C. § 1983 action against several DOC parole agents, alleging that his incarceration beyond his MR date violated the Fourth, Eighth, and Fourteenth Amendments. The defendants moved for judgment on the pleadings, asserting that Allen had not stated a Fourteenth Amendment claim and that they were entitled to qualified immunity on the Fourth and Eighth Amendment claims. The trial court dismissed Allen's Fourth and Fourteenth Amendment claims but determined that the DOC officials were not entitled to qualified immunity with regard to Allen's Eighth Amendment claim. The court concluded that Allen's alleged incarceration beyond his MR date violated the Eighth Amendment prohibition against cruel and unusual punishment and that the law was sufficiently clear at the time Allen reached his MR date for the defendants to have known that their conduct was unlawful.

¶ 7. We granted the defendants' petition under WIS. STAT. RULE 809.50 for leave to appeal the trial court's nonfinal order. *See Arneson v. Jezwinski*, 206 Wis. 2d 217, 220, 556 N.W.2d 721 (1996) (*Arneson I*)

685

(holding that the court of appeals should grant "as a matter of course" petitions for leave to appeal orders that, on the basis of an issue of law, deny defendants qualified immunity from suit under 42 U.S.C. § 1983).

## ANALYSIS

¶ 8. To recover under 42 U.S.C. § 1983, Allen must establish that: (1) the named defendants deprived him of a federally secured right, and (2) at the time they did so, the defendants were acting under the "color of state law." *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981). The defendant parole agents do not dispute that Allen's amended complaint states a claim for an Eighth Amendment violation, and neither do they dispute that they acted under the color of state law in denying him release from incarceration. The defendants contend, however, that the doctrine of qualified immunity shields them from this lawsuit. Whether the trial court correctly applied the doctrine of qualified immunity in denying the defendants' motion for judgment on the pleadings is a question of law that we decide de novo. *Arneson v. Jezwinski*, 225 Wis. 2d 371, 384, 592 N.W.2d 606 (1999) (*Arneson II*).

¶ 9. The doctrine of qualified immunity shields defendants who qualify for it not only from liability for their actions, but also from the burdens associated with defending a § 1983 action. Put another way, "qualified immunity is immunity from suit." *Arneson I*, 206 Wis. 2d at 226 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The doctrine "protects government officials performing discretionary functions from civil liability so long as their conduct does not violate a person's clearly established statutory or constitutional right of

which a reasonable person would have known." *Arneson II*, 225 Wis. 2d at 385. Although qualified immunity is an affirmative defense, in order to defeat it, a § 1983 plaintiff must not only allege a "cognizable violation of constitutional rights," but the plaintiff must also meet the burden of showing that the defendants have violated a "clearly established constitutional right." *Id.* at 390–91.

¶ 10. The defendant parole agents directly challenge only the latter issue—whether it was "clearly established" in 2000 that incarcerating Allen for 377 days beyond his MR date violated his Eighth Amendment right to be free from cruel and unusual punishment. However, "[t]o ensure that legal doctrine may continue to evolve, the [U.S.] Supreme Court has said that courts should consider the two aspects of the immunity inquiry in sequential order, looking first at the question whether the defendants violated the plaintiffs rights, and second at whether a given right was clearly established." *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001). Thus, we will first inquire whether an Eighth Amendment violation arises on the facts Allen alleges, and, if we conclude that it does, we will then examine whether Allen's constitutional right not to be incarcerated beyond his mandatory release date was clearly established when he reached his MR date in 2000.

¶ 11. No Wisconsin state court has addressed whether deliberately incarcerating a person beyond his or her MR date violates the Eighth Amendment's prohibition against cruel and unusual punishment. Recent decisions of the U.S. District Court for the Eastern District of Wisconsin and the Seventh Circuit Court of Appeals, however, have concluded that facts such as

687

those before us constitute an Eighth Amendment violation. We find these decisions persuasive.

¶ 12. The Eastern District concluded unequivocally in *Russell v. Lazar*, 300 F. Supp. 2d 716 (E.D. Wis. 2004), that "[i]ncarcerating a prisoner beyond the termination of his sentence without penological justification violates the Eighth Amendment prohibition of cruel and unusual punishment when it is the product of deliberate indifference." *Id.* at 720. The district court drew principal support for this conclusion from *Campbell*, a Seventh Circuit case, as well as from decisions of the Third and Ninth Circuit Courts of Appeal. *See, e.g., Campbell*, 256 F.3d at 700 (concluding that, "if through deliberate indifference to the requirements of state law the correctional officials kept [plaintiff] imprisoned too long, his Eighth Amendment rights were violated even if the additional time was not very long").

¶ 13. We note, as did the Eastern District in *Russell*, that some federal courts have distinguished "conditions" of confinement from the "fact" of confinement and concluded that "extended incarceration" cases challenge the latter and should be analyzed under the Fourteenth Amendment as potential violations of due process. *See, e.g., Jones v. City of Jackson*, 203 F.3d 875, 880–81 (5th Cir. 2000). As we have noted, however, we find *Campbell* and *Russell* persuasive and we adopt the analysis applied by the federal courts in Wisconsin, where inmates may bring Eighth Amendment claims on facts such as Allen alleges here.[2]

---

[2] We discuss below whether the fact that some federal courts would find a Fourteenth Amendment violation instead of an Eighth Amendment violation on the present facts prevented Allen's rights from being "clearly established" in 2000 when he reached his MR date.

¶ 14. In order to prevail on an Eighth Amendment claim premised on incarceration beyond a legally mandated release date, "a plaintiff must establish three elements":

> First, he must show that a prison official knew of his problem and thus of the risk that he was being or would be subjected to unwarranted punishment. Second, the plaintiff must show either that the official failed to act or took action that was ineffectual under the circumstances, thereby indicating that he was deliberately indifferent to the plaintiff's plight. Finally, the plaintiff must show a causal connection between the officials conduct and the unjustified detention.

*Russell*, 300 F. Supp. 2d at 720 (citing *Moore v. Tartler*, 986 F.2d 682, 686 (3rd Cir. 1993)). Allen's amended complaint sufficiently pleads these elements. He alleged facts from which it is reasonable to infer that the defendants knew that he had reached his mandatory release date, and that he was statutorily entitled to be released on parole.

¶ 15. Allen alleges that, upon reaching his MR date, he was not released to parole but, instead, was moved to a minimum security prison where the defendant DOC officials twice unsuccessfully attempted to revoke his (nonexistent) "parole." Both times, Allen asserts, an administrative law judge ruled that parole revocation was inappropriate because Allen had never been released from prison to parole and, therefore, was still a prisoner. By alleging that the defendants commenced a second parole revocation hearing instead of releasing him on parole, Allen has sufficiently alleged that the defendants failed to act, or took action that was

ineffectual under the circumstances, "thereby indicating that [they were] deliberately indifferent to [his] plight."[3] *Id.*

¶ 16. We also conclude that Allen has asserted a causal connection between the defendants' actions, or lack thereof, and his unjustified detention. The defendant parole agents refused to release Allen to parole, despite two administrative appeal decisions rejecting their attempts to justify reincarcerating him. He alleges that the defendants did not release him from incarceration until ordered to do so by the circuit court in the habeas corpus proceeding.

■■■■■

¶ 17. Thus, Allen has stated a claim for relief under the Eighth Amendment, and we now address whether it was "clearly established" in 2000 that deliberately incarcerating a person beyond his or her MR date violates the U.S. Constitution. A constitutional right is "clearly established" when it would be clear to a reasonable public official that his or her conduct was unlawful in the context of the situation confronted. *Saucier v. Katz,* 533 U.S. 194, 202 (2001). Allen bears the burden of demonstrating that the constitutional violation he alleges was clearly established at the time of the defendants' acts or omissions he complains about. *See Penterman,* 211 Wis. 2d at 469. Accordingly, even though we have concluded that Allen has sufficiently alleged an Eighth Amendment violation in this litigation, our present inquiry requires us to examine the law as it stood in 2000 to determine whether the alleged

---

[3] Because this litigation has not advanced beyond the pleadings, there are no additional facts in the record that might permit competing inferences.

facts clearly established the unlawfulness of the defendants' conduct at that time.

¶ 18. The Supreme Court has explained that it is not necessary, in order to defeat a claim of qualified immunity, to show that "the very action in question has previously been held unlawful; but that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To be "clearly established," therefore, the law need not "specifically correspond with every facet of the present situation. Rather, the 'clearly established law' must be sufficiently analogous to provide the public official with guidance as to the lawfulness of his or her conduct." *Barnhill v. Board of Regents of the UW Sys.*, 166 Wis. 2d 395, 408, 479 N.W.2d 917 (1992). Thus, our task is to determine whether a reasonable public official could have believed, albeit mistakenly, that it was lawful to continue to incarcerate Allen, instead of releasing him on parole after he reached his MR date. *See id.* at 408–09. We conclude that a reasonable DOC official could not have so believed in January through December of 2000.

¶ 19. We note first that the defendants do not dispute Allen's contention that no reasonable Wisconsin corrections official could have believed in 2000 that state law authorized them to incarcerate Allen beyond his MR date. *See State ex rel. Woods v. Morgan*, 224 Wis. 2d 534, 591 N.W.2d 922 (Ct. App. 1999); *State ex rel. Olson v. Litscher*, 2000 WI App 61, 233 Wis. 2d 685, 608 N.W.2d 425. Rather, the defendants' only response to this point is that a violation of state law, without more, does not "abrogate an official's qualified immunity from suit for violation of federal constitutional rights." *Kompare v. Stein*, 801 F.2d 883, 888 n.6 (7th Cir. 1986).

¶ 20. The defendants' response, however, misses the point. State law establishes the date Allen was entitled to be released from his incarceration, and it is the defendants' deliberate incarceration of Allen after that date that he claims violated his federal constitutional rights. If a reasonable correctional official could have believed in 2000, although mistakenly, that state law authorized Allen to be incarcerated beyond his MR date, then Allen has failed to establish a constitutional violation because the defendants did not act with "deliberate indifference" in failing to release him to parole, only by mistake in not doing so. *See Campbell*, 256 F.3d at 700–02. As noted, however, the defendants do *not* argue that, in 2000, state law was unclear whether Allen was entitled to release on parole upon reaching his MR date. We agree with Allen that *Woods* and *Olson* clearly established that he was. *See Olson*, 233 Wis. 2d 685, ¶¶ 1, 5 (holding that "the DOC has no authority to hold an inmate in custody beyond his or her mandatory release date," and noting that "there is no gray area in the statute—it is crystal clear"). As the Seventh Circuit has observed, " '[i]n many cases the same conduct will violate both state law and the federal Constitution.' " *Kompare*, 801 F.2d at 888 (citations omitted).

¶ 21. The defendants' claim for qualified immunity is grounded on their assertion that, in 2000, existing law did not clearly establish that incarceration of an individual for a significant period of time beyond a legally mandated release date violates the Eighth Amendment. They point out that, at the time of the alleged violation, no Wisconsin case had so held and federal courts were split on whether incarceration beyond a legally mandated release date violated the Eighth Amendment or the Fourteenth Amendment. The defendants identify *Moore v. Tartler*, 986 F.2d 682

(3rd Cir. 1993), *Sample v. Diecks*, 885 F.2d 1099 (3rd Cir. 1989), and *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985), as all concluding that officials who are "deliberately indifferent" to a prisoner's incarceration beyond his or her release date violate the prisoner's Eighth Amendment rights. They also cite, however, the following federal cases as evidence that several federal circuits had concluded in or before the year 2000 that such "refusals to release" instead transgress the Fourteenth Amendment's due process guarantee: *Jones v. City of Jackson*, 203 F.3d 875 (5th Cir. 2000), *Ricker v. Leapley*, 25 F.3d 1406 (8th Cir. 1994), *Hall v. Lombardi*, 996 F.2d 954 (8th Cir. 1993), and *Slone v. Herman*, 983 F.2d 107, 110 (8th Cir. 1993).

¶ 22. In other words, the defendants essentially argue that Allen's constitutional right to not be incarcerated beyond his MR date was unclear because some federal precedents addressed the plight of unreleased prisoners in due process terms, while others did so under an Eighth Amendment analysis. The defendants assert, and we acknowledge, that disparate holdings among U.S. Circuit Courts of Appeal may well be "indicative of the fact that . . . rights in this regard are currently unsettled as a matter of constitutional law and therefore were not 'clearly established.' " *Upton v. Thompson*, 930 F.2d 1209, 1217 (7th Cir. 1991). The split among U.S. Circuits relied on by the defendants in this case, however, was not over whether deliberately extending incarceration beyond a date legally mandated for release violates the U.S. Constitution, but over which of two constitutional protections the alleged conduct violates.

¶ 23. We conclude that the unlawfulness of the defendants' actions was clearly established in 2000

despite the lack of unanimity among federal courts as to precisely which constitutional provision rendered their conduct unlawful. That is, although, as a federal district court has noted, there was "some confusion as to whether the constitutional right [not to be imprisoned beyond a mandated release date] is founded in due process or the Eighth Amendment," the "threshold for liability . . . is the same." *McCurry v. Moore*, 242 F. Supp. 2d 1167, 1178–79 (N.D. Fla. 2002). The proper question is "not whether the defendants could have cited the exact article, section, and clause of the Constitution that they were offending. It is instead the more practical question of whether they would have understood that what they were doing violated the plaintiffs' rights." *Markham v. White*, 172 F.3d 486, 492 (7th Cir. 1999); *see also McCurry*, 242 F. Supp. 2d at 1182 ("[T]he question to ask is whether prison officials have been given fair warning that their actions or omissions are unconstitutional.").

¶ 24. Therefore, although we agree that a reasonable public official could have believed in 2000 that deliberately incarcerating Allen beyond his MR date violated his rights under the Fourteenth Amendment instead of under the Eighth Amendment, we conclude that no reasonable public official could have believed that such continued detention was constitutionally permissible. The doctrine of qualified immunity protects against the unfairness of subjecting public officials to money damages "for picking the losing side of the controversy" when the existence of a constitutional right has not been clearly established. *Wilson v. Layne*, 526 U.S. 603, 618 (1999). Here, however, any controversy over the specific source of the constitutional right not to be incarcerated beyond one's mandatory release

date cannot be said to have created any doubt regarding the existence of such a right.

¶ 25. Finally, we note that, although the argument is not well developed, the defendants also appear to suggest that, prior to *Campbell*, 256 F.3d 695, the Seventh Circuit had affirmatively concluded that a prisoner had no federal constitutional right to be released on his or her MR date. The suggestion is premised on the Seventh Circuit's conclusion in one case that a prisoner "has no substantive due process right to an early release from prison," *Toney-El v. Franzen*, 777 F.2d 1224, 1227 (7th Cir. 1985), and in another that "the Eighth Amendment's prohibition against cruel and unusual punishment and any substantive rights . . . under the Due Process Clause are coextensive," *Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988) (citation omitted). We reject the conclusion the defendants apparently wish us to draw from the cited passages.

¶ 26. The plaintiff's incarceration in *Toney-El* was wrongly extended because of a mistake in computing his mandatory release date, not because corrections officials deliberately refused to release him on a date they knew he was entitled under state law to be released. The Seventh Circuit emphasized in *Toney-El* that the plaintiff "clearly had a constitutionally protected liberty interest in being released from prison before the end of his term for good behavior," *Toney-El*, 777 F.2d at 1226, but it concluded that Illinois corrections officials had provided a "method of reviewing challenges to the calculation of custody or release dates [that] satisfies the dictates of procedural due process." *Id*. at 1229.

¶ 27. The observation in *Toney-El* that a prisoner has no substantive due process right to an early release from prison means only that states are not constitu-

tionally obligated to provide for early release. If a state so provides, however, it was clearly established in 2000 that corrections officials are constitutionally obligated (1) to provide adequate procedures for determining and reviewing the correctness of a prisoner's release date, and (2) to not deliberately incarcerate the prisoner beyond the date mandated under state law for the prisoner's release. *Toney-El* addressed only the first obligation; it did not disavow the second.

## CONCLUSION

¶ 28. For the reasons discussed above, we affirm the appealed order.

*By the Court.*—Order affirmed.