David Wayne PLUMB, Plaintiff,

v.

Robert PRINSLOW, Marion County Sheriff, John Doe 1 (Marion County Sheriff Department Officer in charge of credit for time served statements), John Doe 2 (Release Officer—EOCI), A.L. Lewis, (Release Officer—EOCI), Kimberly Abbott (Release Officer—EOCI), N. Toronto (Records Department—EOCI), Vern Faatz (Chairman, Oregon Board of Parole), John and Jane Does 3–10 (Members, Board of Parole), Defendants.

No. CV 92–442–AS.

United States District Court,
D. Oregon.

March 14, 1994.

---

Jeff Price, Portland, OR, for plaintiff.

Theodore R. Kulongoski, Atty. Gen., Jan Peter Londahl, Asst. Atty. Gen., Department of Justice, Salem, OR, for State defendants.

Robert C. Cannon, Marion County Legal Counsel, Timothy T.A. Jensen, Asst. Legal Counsel, Salem, OR, for defendants Robert Prinslow and John Doe 1.

PANNER, District Judge.

Plaintiff David Plumb brings this action for damages against county and state officials whose actions (or inaction) allegedly resulted in plaintiff being wrongly imprisoned for seventy days after the date on which he should have been released from custody. Magistrate Judge Ashmanskas filed two sets of Findings and Recommendations, one on October 7, 1993 and another on November 24, 1993. The Magistrate Judge recommended granting defendants' motion for qualified immunity (# 23) on grounds plaintiff had no liberty interest in credits for time served, and thus defendants Lewis, Toronto, Faatz, and Does 2 through 10 were qualifiedly immune from suit. The Magistrate Judge also recommended granting defendants' motion (# 35) for summary judgment on the Fourteenth Amendment claims against defendants Prinslow and John Doe 1 because plaintiff was not deprived of any liberty interest. Finally, the Magistrate Judge recommended dismissing plaintiff's negligence claim pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), because after dismissal of the federal claims the court would no longer have pendent jurisdiction over plaintiff's state law claims.

■ The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R.Civ.P. 72(b). Plaintiff has timely objected to certain parts of the Magistrate Judge's report. When either party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* review of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). The district court must also review

*de novo* the legal principles in the entire report, not just the part objected to. *See Britt v. Simi Valley Unified School Dist.,* 708 F.2d 452, 454 (9th Cir.1983).

I decline to adopt the Magistrate Judge's Findings and Recommendations. Instead, I dismiss the claims against defendants Abbott, Lewis, Toronto, Faatz, and Does 2 through 10, on grounds that while plaintiff was deprived of a liberty interest, and his unlawful detention may also have been contrary to the Eighth Amendment, a reasonable public official in 1990 would not have known that the actions taken by these defendants violated plaintiff's clearly established constitutional rights. I deny the motion for summary judgment as to defendants Prinslow and "John Doe 1." I retain jurisdiction over the pendent claims.

## BACKGROUND

In January, 1989, plaintiff was a pretrial detainee at the Marion County Jail ("Jail"), in the custody of Marion County Sheriff Prinslow. On January 13, 1989, plaintiff was convicted in Marion County Circuit Court of two counts of driving under the influence of intoxicants and two counts of driving with a revoked license. He was fined, and given a suspended prison sentence. As a condition of probation, plaintiff was ordered confined to the Marion County Restitution Center ("Work Center") (a work-release facility) for a period of six months. The Work Center is also operated by Sheriff Prinslow. On January 20, 1989, plaintiff was transferred from the Jail to the Work Center. On February 24, 1989, plaintiff failed to return to the Work Center, and was placed on abscond status.

Plaintiff was arrested approximately 40 days later, and taken to the Clackamas County Jail. He was then transported to Linn County, where he pled guilty to a charge of driving with a revoked license, and was sentenced to a term in state prison. On April 13, 1989, plaintiff was transported to the Oregon State Correctional Institute ("OSCI") to begin serving his sentence. The OSCI is operated by the Oregon Department

of Corrections ("ODOC"). Since plaintiff had violated the terms of his probation, he was also taken to Marion County Circuit Court on July 26, 1989 for resentencing. Later that day, plaintiff was returned to OSCI, and eventually sent to another ODOC facility, the Eastern Oregon Correctional Institution ("EOCI").

Oregon law provides that an inmate serving time in an ODOC facility will be given credit against his sentence for "time that the person is confined by any authority after the arrest for the crime for which sentence is imposed." ORS 137.370(2)(a) (1989). In this case, plaintiff had been confined in the Marion County Jail and Work Center for several months following his arrest on the charges for which he was now being sent to state prison.

The Sheriff in the county where the inmate has been confined is responsible for certifying the time served and forwarding that information to the appropriate officials at the ODOC. ORS 137.320 (1989); OAR 291–100–013(2) (1989). The ODOC did not timely receive a credit for time served ("CTS") certification from Marion County. Plaintiff states that when he arrived at EOCI, Superintendent Wright cautioned new inmates not to wait for the county to send the CTS forms, because the Sheriff was unlikely to do so without prompting by the inmate. Plaintiff says he then wrote a letter [1] to Sheriff Prinslow requesting any CTS to which he was entitled, but received no reply. Plaintiff estimates that letter was sent a month after his arrival at EOCI, i.e., approximately October 1, 1989. The county defendants deny any knowledge of this letter. Plaintiff may have sent a second letter, but the record contains conflicting statements from plaintiff on this issue.

On March 29, 1990, plaintiff received a notice from the Board of Parole and Post–Prison Supervision ("Parole Board") advising him a parole hearing had been set for April 16. The notice also advised that Parole Board records indicated he was not entitled

---

**1.** Although plaintiff uses the term "letter," this may have been a prepared form furnished to inmates by the EOCI for this express purpose.

to any CTS. The notice spurred plaintiff to renew his efforts to obtain CTS certification from Marion County. He obtained a special form (developed for just this purpose) from the EOCI records office, and mailed it to the Marion County Sheriff's Office. The form is dated April 2, 1990, and plaintiff avers he mailed it on or about that day. Defendants concede that the Sheriff's Office did not respond to that request until at least May 16, 1990, more than six weeks after the date plaintiff claims he mailed the letter. The county defendants say it is their practice to respond to such requests within a week, so plaintiff must not have mailed the request until some time in May (well after the April 16 parole hearing). However, the request form was not date-stamped when it arrived, and the county defendants say they have no independent recollection of its arrival.

On May 16, 1990, Sheriff's Office employee Wendy Anton (now Wendy Anton Guest), who is reportedly the John Doe 1 referred to in the complaint, prepared a CTS certification showing plaintiff was entitled to 83 days credit for time served in Marion county.[2] The county defendants say this form was mailed on May 16. The state defendants maintain the form was not received at EOCI until May 24. If both dates are correct, it took eight days for a letter to travel the length of Oregon.

The CTS certification arrived at EOCI more than a month after plaintiff's April 16 parole hearing. At that hearing, the parole board panel found that consecutive sentences were not appropriate, and set plaintiff's prison term at twelve months.[3] Since plaintiff's date of commitment was July 26, 1989, his release date was established at July 25, 1990. Had the Parole Board received the CTS certificate from Marion County, plaintiff would have been credited with having already served 83 days towards his twelve month sentence, and his parole release date would have been May 4, 1990. Plaintiff says he mentioned the CTS problem at the parole board hearing, and was told that when the Board received the CTS certificate from Marion County his release date would be adjusted accordingly.

Defendant Toronto attests that the EOCI records office received the CTS certification from Marion County on May 24, 1990, but "[d]ue to EOCI Records staff vacation and sick leave" her "first opportunity" to review plaintiff's file was on June 3. It is unclear whether the delay was caused by Toronto being on vacation, or the certification was delayed in reaching Toronto because of the absence of another employee. Toronto says she prepared a new "facesheet" reflecting the 83 days CTS and mailed it to the Parole Board on June 5.[4] Toronto says she as-

2. Defendants now maintain that certification was erroneous and plaintiff should have been credited with only 48 days, on grounds the time spent at the Work Center should not count towards CTS. Credit for time served includes the time that the person is "confined by any authority" after the arrest for the crime for which sentence is imposed. ORS 137.370(2)(a). The January 13, 1989 judgment ordered plaintiff be "confined" to the Work Center for a period of six months. I also note that ORS 144.490(2) provides that a person enrolled in an ODOC work release program is considered to be an inmate of an ODOC institution. Time spent in an ODOC work release program is also credited against an inmate's prison sentence.

Defendants argue that the two are distinguishable because the Work Center is not formally designated as a correctional facility. They also note that a person who walks away from the Work Center cannot be prosecuted as an escapee. For purposes of these motions, it is not necessary to resolve this conflict. Whether plaintiff was entitled to 48 days credit or 83 days

credit does not affect his liberty interest (or lack thereof) to those credits. Moreover, at the time of the events in question defendants believed plaintiff was entitled to 83 days credit, and were obliged to act accordingly. The number of credits would be relevant to determining the number of additional days that plaintiff was confined, and thus the amount of damages, if any, to which he would be entitled.

3. The Parole Board does not have unbridled discretion to establish the length of a prison term. The term is computed in accordance with a formula established in OAR Chapter 255, Division 35.

4. Although Toronto says she did not review plaintiff's file until June 3, and did not contact the Parole Board until June 5, the record contains a memo from Toronto to plaintiff advising him she had received the CTS statement, revised his records accordingly, and sent a copy to the Parole Board. That memo is dated June 1. Defendants have not explained this apparent contradiction.

sumed the Parole Board would order plaintiff's immediate release through a teletyped notice to the prison. That did not happen.

On June 6, 1990, plaintiff sent a "kite" to Mr. Beebe (a staff member at EOCI), informing Beebe the CTS certification had arrived, that he was therefore past his parole release date, and asking Beebe to *"please act accordingly"*. (emphasis in original) Beebe responded that he was waiting for the Parole Board to formally change the release date. On June 7, 1990, plaintiff also sent a kite to Miss A.L. Lewis, a release counselor at EOCI, informing her he was eligible for parole immediately and asking her to process the necessary paperwork "A.S.A.P." Lewis responded that the Parole Board would determine his release date, and she would wait for them to act. On June 14, 1990, he again wrote to Lewis, who replied that she was still waiting for the Board to act. On June 15, 1990, plaintiff sent a kite to another release counselor at EOCI, Kimberly Abbott, advising that he needed to talk to her "A.S.A.P." Abbott responded that she would be unable to meet with him personally because her time was limited, but would answer any written questions he submitted.

Although plaintiff was close to being paroled from EOCI, at least two counties had lodged detainers against him for other vehicular violations. On or about June 21, 1990, plaintiff was transported to the Washington County Jail for a hearing on one of those cases. The arrest warrant set bail at $3,000. When plaintiff arrived at the jail, he attempted to post bail. EOCI officials intervened and prevented his release because plaintiff was still serving his state sentence.

On June 29, defendant Toronto sent a teletype to the Parole Board reminding them of the CTS certification and revised facesheet. On July 5, the Parole Board ordered plaintiff's immediate release, with the proviso that the release could be delayed up 15 days if EOCI needed more time to develop an ade-

quate release plan.[5] Plaintiff was paroled on July 11, 1990.[6]

## STANDARDS

█ Public officials may not be held personally liable for violating a person's constitutional rights unless the right violated was sufficiently clear that a reasonable official would understand that his conduct violates that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The very conduct in question need not have been previously held unlawful, but the unlawfulness must be apparent in the light of pre-existing law. *Id.*

█ The threshold determination of whether the law governing the conduct at issue is clearly established, and whether a reasonable official could have believed his conduct was lawful in light of clearly established legal principles, is a question of law for the court. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993). As with any motion for summary judgment, evidence and the inferences therefrom must be viewed in a light most favorable to the nonmoving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors,* 809 F.2d 626, 630–31 (9th Cir.1987).

## DISCUSSION

Legal posturing aside, if the CTS certification had been timely processed, plaintiff would have been released on May 4 rather than July 11. The question is whether defendants are personally liable for the extra months plaintiff was imprisoned.

1. *Due Process:*

█ Defendants contend plaintiff lacked a protected liberty interest in his credits for time served. I disagree. A state creates a protected liberty interest by placing substantive limitations on official discretion. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989). A state may do this in a

---

**5.** Plaintiff does not claim damages for the six day period between July 5 and July 11.

**6.** Plaintiff was not released outright, but transported to Linn County, which had also placed a detainer on him. Had plaintiff been paroled

earlier, he would have begun serving his Linn County sentence that much sooner, which in turn would have advanced his ultimate release from custody.

number of ways. The most common manner is by establishing substantive predicates to govern official decision making, and mandating the outcome to be reached upon a finding that the relevant criteria have been met. *Id.* The statute or regulation in question must contain "explicitly mandatory language." *Id.* at 463, 109 S.Ct. at 1910.

Under Oregon law, the "time that the person is confined by any authority after the arrest for the crime for which sentence is imposed" is counted as time the inmate has served on his sentence. ORS 137.370(2). There is no room for discretion. *See also* OAR 255–25–010(1) (1989) (time served credit *shall* be granted towards the prison term for certified time served in the county jail after arrest, including time served in the county jail as a condition of probation); OAR 291–100–013(2)(d) (Credit for time served in a county jail or other confinement facility *will* be applied on a day-for-day basis upon receipt of proper documentation).

■ The Magistrate Judge reasoned that since plaintiff's original prison sentence would not have expired until January 1993, subtracting 83 days from his sentence would have required his release sometime in September or October 1992, long after his actual release date, hence plaintiff had suffered no harm. The Magistrate Judge erred by assuming credits for time served are deducted from the original prison sentence pronounced by the sentencing judge. The phrase "prison term" as used in OAR Chapter 255 does not refer to the original sentence, but rather the term established by the Board of Parole to be served before the parole release date, in this case twelve months. OAR 255–05–005(33) (1989).[7] The Magistrate Judge further erred by citing ORS 137.320(4) for the same proposition. The latter applies only to a sentence to be served entirely in the county jail, for which there is no parole and thus the sentence pronounced by the judge is also the actual sentence to be served.

■ The Magistrate Judge also relied upon OAR 255–25–010(4), which provides that "If additional time served credits are received after the prison term has been established, the Board *may* administratively correct the parole release date. The person so affected shall receive notice in writing of the Board's action." (emphasis added). Defendants contend that the use of the term "may" deprives plaintiff of a liberty interest in his time served credits. I disagree. If the county defendants had performed their respective duties in the manner plaintiff contends they were legally obliged to do, the Parole Board would have received the CTS certification prior to the parole hearing, and plaintiff would have had an absolute legal entitlement to those credits. A jury could find that by not performing their duties, defendants wrongly deprived plaintiff of his right to those credits.

■ Moreover, if plaintiff had an absolute right to those credits, state law cannot deprive him of that right merely because the state's employees failed to timely perform their duties. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (state law which provided that employment discrimination claim would be extinguished unless state commission took appropriate action within 120–day deadline violated due process, because the law destroyed the employee's property interest in his claim without any opportunity to have it heard on the merits, even though plaintiff had no power to compel the commission to act within the required timeframe). To the extent OAR 255–25–010(4) conflicts with *Logan*, the regulation is invalid.

■ Even assuming the Parole Board was not compelled to advance plaintiff's release date because the CTS certification was submitted after his initial release date had been established, plaintiff still had a liberty interest in having his claim presented to the Parole Board for their consideration. Otherwise, EOCI officials could have deliberately destroyed the CTS certification from Marion County, and plaintiff would be deemed to have no legal recourse, since he lacked any

---

7. *Cf.* OAR 291–97–010(5) (for purposes of Division 97 of Chapter 291, the phrase "prison term" means the term pronounced by the sentencing court). When different meanings are assigned to the same phrase in different chapters of the OAR, confusion is inevitable.

liberty interest in the credits. That cannot be right.

■ Finally, to the extent OAR 255–25–010(4) purports to allow the Parole Board to refuse to advance the release date upon receipt of time served credits, that regulation is inconsistent with ORS 137.370. At the April 16 hearing, the Parole Board established a prison term of twelve months for plaintiff. Once a prison term has been established, that term may be extended only under specific circumstances enumerated in OAR 255–50–005 *et seq.*, and in accordance with the procedures outlined therein. Accordingly, an inmate has a liberty interest in his prison term as established by the Parole Board. *See Kentucky Dept. of Corrections*, 490 U.S. at 462–63, 109 S.Ct. at 1909–10.

■ Because the information before the Parole Board indicated that plaintiff's prison term commenced on July 26, 1989, and he was to serve a twelve month sentence, his parole release date was determined to be July 25, 1990. It was subsequently learned that plaintiff had accrued credits for time served in county custody. Pursuant to ORS 137.370, those credits are automatically credited towards the time served on this sentence. The net effect was that as of May 4, 1990, plaintiff had served the full twelve month term established by the Parole Board, and was entitled to be released from prison. Plaintiff could not be held beyond that date unless the Parole Board voted to extend his sentence, which it could do only for the specific grounds enumerated in OAR 255–50–005, none of which are applicable here.

Adjusting the parole release date was therefore a ministerial act. The regulations implicitly acknowledge that fact by authorizing the Parole Board to administratively correct the parole date. OAR 255–25–010(4), 255–80–12 (1989). The Parole Board need only have verified that a valid CTS certification had been received from Marion County, and computed the new release date based upon the adjusted commitment date. There was no room for any discretion on the part of the Parole Board. To the extent OAR 255–25–010(4) purports to grant the Parole Board such uncabineted discretion,[8] that regulation is contrary to ORS 137.370. Because CTS is considered time that has been served towards the sentence established by the Parole Board, the Parole Board *must* recompute the parole release date to reflect credits for time served when such credits are received after the initial parole release date has been set.[9] I conclude plaintiff had a protected liberty interest in his credits for time served, regardless of whether the certification was received by the Parole Board before or after the date of the parole hearing.[10]

■ Although plaintiff had a protected liberty interest, he must also demonstrate that defendants wrongly deprived him of that interest. Liability under § 1983 can be premised upon an omission of an act that the official has a clearly established duty to take, providing the omission is a foreseeable contributing factor to the violation of the plaintiff's constitutional rights. *Alexander v. Perrill*, 916 F.2d 1392, 1396 (9th Cir.1990).

8. The purported grant of uncabineted discretion, absent any guidelines whatsoever, is inconsistent with the overall regulatory scheme which otherwise provides officials with fairly explicit guidance in all parole-related decisions. One possible explanation for this anomaly is that the term "may" was intended to modify the word "administratively", i.e., if the time served credits arrive after an initial parole release date has been set, the parole board may administratively correct the parole date without having to follow the formal parole hearing process. The parole board would have discretion to determine the means to correct the parole release date, as opposed to deciding whether the release date should be adjusted at all. Such a reading would be more consistent with the overall regulatory scheme.

9. Plaintiff might also have an equal protection argument, because equally situated inmates are treated differently depending upon whether the Sheriff furnishes the certification before or after the parole hearing. *See Logan*, 455 U.S. at 442, 102 S.Ct. at 1161 (opinion of Justices Blackmun, Brennan, Marshall, and O'Connor) and at 443–44, 102 S.Ct. at 1162 (opinion of Justices Powell and Rehnquist).

10. Plaintiff also contends the Parole Board told him that when the CTS certification arrived from Marion County, his parole release date would be adjusted accordingly. Assuming that is true, it might constitute an additional basis for finding plaintiff had a protected liberty interest.

The Sheriff in the county where the inmate has been confined is responsible for certifying the time served and forwarding that information to the appropriate officials at the ODOC. ORS 137.320; OAR 291–100–013(2). The county defendants contend that duty did not apply here. I disagree. ORS 137.320 provides in relevant part that:

(1) When a judgment includes commitment to the legal and physical custody of the Department of Corrections, the sheriff shall deliver the defendant, together with a copy of the entry of judgment and a statement signed by the sheriff of the number of days the defendant was imprisoned prior to delivery, to the superintendent of the Department of Corrections institution to which the defendant is initially assigned pursuant to ORS 137.124.

(2) If the defendant is surrendered to another legal authority prior to, delivery to an institution of the Department of Corrections, the sheriff shall forward to the Department of Corrections a copy of the entry of judgment, a statement of the number of days the defendant was imprisoned prior to surrender, and an identification of the authority to whom the prisoner was surrendered.

(3) Upon receipt of the information described in subsection (1) or (2) of this section, the Department of Corrections shall establish a case file and compute the defendant's sentence in accordance with the provisions of ORS 137.370.

Defendants correctly discern that this statutory scheme fails to expressly account for a third category of persons who do not report directly from one institution to another. The most obvious example is a person who is detained in the county jail for several months, but is ultimately able to post bail. If that individual is later convicted and ordered to report to state prison, then the prisoner has never been "surrendered" to any authority, and the sheriff's duty to certify the credits for time served is not expressly triggered by ORS 137.320.

In the present case, plaintiff failed to return to a Work Center, and was later arrested and confined in a different county jail. The Sheriff never formally "surrendered" or "delivered" plaintiff to some other authority. Plaintiff later returned to Marion County for sentencing, but defendants contend he was not in the "custody" of the Sheriff. Plaintiff was incarcerated at OSCI, which is an ODOC facility. Defendants contend that ODOC employees transported plaintiff from OSCI to court, and returned him to OSCI later that same day. Before (and perhaps after) his court appearance, plaintiff was placed in a holding cell at the Marion County Jail, but plaintiff was not formally booked into the jail. The county defendants contend that during those few hours at the Marion County Jail, plaintiff "would" have always been in the custody of the ODOC, not Sheriff Prinslow (though the affiant has no personal knowledge of what actually occurred on the day in question, and is attesting to what she believes is the approved procedure). Plaintiff counters with an affidavit that he was guarded exclusively by Marion County Sheriff's deputies, not ODOC employees, while in the holding cell.[11]

11. Plaintiff's affidavit was filed *after* the Magistrate Judge filed his report. Defendants then filed an affidavit of their own, which was attached to defendants' response brief. Ordinarily, when a court functions in an appellate capacity relies upon the record established below, not a new record furnished in response to the first tribunal's findings. Here, the district court is not functioning in a purely appellate capacity, since it reviews both the findings of fact and conclusions of law *de novo*. Nonetheless, I question whether new evidence may be included with objections as a matter of course. Pursuant to 28 U.S.C. 636(b)(1)(C), the district judge reviewing a magistrate judge's report *may* receive further evidence. Fed.R.Civ.P. 72(b) authorizes the district court to make a de novo determination "upon the record, or after additional evidence ...." In other words, the district court may, but is not required, to permit supplementation of the record.

The magistrate judge who has been managing the case is in a better position than the district judge to ascertain whether there is a valid justification for the tardy proffer. Accordingly, a party wishing to offer new evidence should ordinarily present that evidence to the magistrate judge in the form of a motion for reconsideration. Where that is not practical, the party may move to supplement the record, accompanied by an affidavit explaining why the new evidence could not have been presented to the magistrate judge in the first instance, or upon reconsideration. New evidence should not· be attached to objections

Arguably, Sheriff Prinslow's legal duty was triggered once plaintiff was returned to Marion County to be sentenced by a Marion County Judge, regardless of whether ODOC or county deputies were assigned to his cell. The question is moot because even assuming ORS 137.320 does not provide for this contingency, OAR 291–100–13(2)(d) does. That section provides, in relevant part:

> Credit for time served in a county jail or other confinement facility will be applied on a day-for-day basis upon receipt of proper documentation which will be provided by the sheriff at time of delivery. *In the event the sheriff does not deliver the time served statement, it must be mailed directly to the institution's Records Office staff or teletyped.*

(emphasis added). Delivery of the prisoner is therefore not a prerequisite to the Sheriff's duty to certify credits for time served. When the sheriff does not deliver the prisoner, the Sheriff must mail the credits directly to the prison or ODOC.

Although Sheriff Prinslow's lawyers now maintain he had no legal duty to certify CTS for inmates no longer in his custody, a jury could find Sheriff Prinslow knew otherwise. His office established a special procedure in conjunction with the state court system and district attorney for the express purpose of providing CTS certification for inmates "not in my custody" so that "all parties could comply with their statutory and legal obligations regarding paper work on criminal cases." The court would sign the judgment and then distribute copies to the appropriate parties, including the Sheriff's Office, Jail, ODOC, defense attorney, and court file.

■ Consistent with Sheriff Prinslow's description of the approved procedure, there is a notation on the bottom of the judgment of conviction indicating that copies were to be sent to the Sheriff's Office and the jail after the judgment was signed. The affidavit of Sheriff's Office employee Laurie Steele advises that when the Sheriff's Office receives a copy of the judgment, it is supposed to send a CTS certification to ODOC. That admittedly did not happen here. Steele speculates

that since the Sheriff's Office "would" have issued the CTS certificate if it received a copy of the judgment, and no certificate was sent, the omission must be due to the court's failure to send a copy of the judgment. However, a jury could conclude that the Sheriff's Office did receive the judgment, but failed to issue the CTS certificate. In any event, Sheriff Prinslow had a legal duty to transmit a CTS certification to the ODOC upon receipt of either a copy of the judgment or a request for certification from the inmate or ODOC officials, whichever came first.

Defendants allegedly had several opportunities to rectify that omission. Plaintiff claims he wrote Sheriff Prinslow on at least one, and perhaps two, occasions in 1989, requesting a CTS certificate, but received no reply. Defendants question his account of events. That is a disputed issue of material fact. Plaintiff also sent the Sheriff's Office a CTS certification request form, dated April 2, 1990. A reply, dated May 16, was not received at EOCI until May 24. Although defendants question the date on which plaintiff mailed the request, a jury could find defendants ignored plaintiff's request for almost two months.

■ The state defendants likewise had a legal duty to act. OAR 291–100–013(2)(d) provides that "The credit for time served will be given to the Parole Board by the Records Office *as soon as it is known* ..." (emphasis added). OAR 291–100–013(2)(e) provides that "[i]f county jail time credits are received by a Records Officer after the Parole Board has established a parole release date for a particular inmate, the Records Officer shall submit a corrected face sheet to the Parole Board."

■ To the extent plaintiff is asserting a claim for procedural due process case, the trial court will have to determine whether it was practical for defendants to implement additional procedures that would have reduced the risk of erroneous deprivation. *See Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470 (9th Cir.1992) (additional pro-

without leave from the court. In this case, since neither party has objected to supplementation of

the record, I will allow the filing of these two affidavits.

cedures would have significantly reduced the risk of a prisoner being erroneously detained in Multnomah County Jail for 114 days).

### 2. Eighth Amendment:

 The facts alleged by plaintiff also state a claim under the Eighth Amendment.[12] In *Haygood v. Younger*, 769 F.2d 1350 (9th Cir.1985) (en banc), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986), the Ninth Circuit held that confining a prisoner past his release date violates the Eighth Amendment. Defendant contends *Haygood* should be dismissed as an "aberration." A district court cannot simply ignore a unanimous en banc Ninth Circuit decision absent express Supreme Court authority to the contrary. Until the Circuit advises otherwise, *Haygood* continues to be good law. It was followed in *Alexander v. Perrill*, 916 F.2d 1392 (9th Cir.1990), and the Third Circuit has applied the same principle in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir.1989) and *Moore v. Tartler*, 986 F.2d 682 (3d Cir.1993).

 In each case, prison officials refused to release the inmate because they honestly but erroneously believed he had no right to be released. To find liability, the inmate must show that the official was aware of his complaint, but failed to aggressively investigate it, thus satisfying the deliberate indifference standard. The inmate is not required to show it was clearly established that he was entitled to be released. Rather, he need only have been clearly entitled to an investigation of his complaints. *Alexander*, 916 F.2d at 1397 n. 9. Whether the inmate was entitled to be released goes to the issue of causation of the injury, and is not at issue on qualified immunity. *Id.* at 1399 n. 13.

 Although the Eighth Amendment clearly applies to the state defendants, the connection with the county defendants is considerably more attenuated. Plaintiff was not in the physical custody of the Sheriff during the unlawful detention, nor could the Sheriff directly order plaintiff's release. However, the same was true of many of the defendants in *Haygood*, *Alexander*, and *Sample* who were mostly records clerks with a duty to investigate complaints or furnish accurate information to those officials in a position to determine whether the inmate should be released. Here, a jury could find that the county defendants: (1) knew plaintiff was entitled to time served credits for the time he was confined by Marion County following his arrest, (2) had a duty to transmit those credits, (3) knew plaintiff would not receive the credits unless they acted, and (4) knew that as a result of their inaction he would serve additional time in prison unnecessarily and contrary to law. There is a sufficient relationship between the act or omission and the result to state a claim against the county defendants for violating plaintiff's Eighth Amendment rights.

### 3. Qualified Immunity:

 Defendants contend they are entitled to qualified immunity because plaintiff had no clearly established right to be released prior to the date his original sentence (i.e., the sentence pronounced by the judge) expired. I disagree. Defendants rely upon a First Circuit case holding that the right of a Massachusetts inmate to due process in the rescission of a reserve parole date was not clearly established under Massachusetts law in 1984. *Lanier v. Fair*, 876 F.2d 243, 253 (1st Cir.1989). That has no bearing upon a liberty interest in a credit for time served under Oregon law in 1989–90. Furthermore, the *Lanier* court held that the inmate *did* have a liberty interest in his reserve parole date because Massachusetts law provided that a parole date could not be revoked unless certain specific findings were made (e.g., serious misconduct, new criminal charges). *Id.* at 252–53. That is virtually identical to the Oregon system. The *Lanier* defendants were entitled to qualified immunity only because that right had not been clear back in 1984. If *Lanier* has any application to this case, it shows that a reasonable public official in 1989 *would* have known an Oregon inmate

---

12. Plaintiff did not denominate his claim as arising under the Eight Amendment, but a federal court will not dismiss a claim merely because it is incorrectly labeled. Defendants correctly perceived that the facts could be construed to state an Eighth Amendment claim and argued that issue in their memorandum in support of the motion.

had a liberty interest in his prison term and parole date, once established, as well as his credits for time served.

Defendants also cite two 1987 Ninth Circuit cases that declined to decide whether an Oregon inmate was entitled to due process in the *setting* of a parole date. *Jancsek v. Oregon Board of Parole*, 833 F.2d 1389 (9th Cir.1987); *Pedro v. Oregon Parole Board*, 825 F.2d 1396 (9th Cir.1987). The Ninth Circuit's refusal to render an advisory opinion is not determinative of the issues here. The standard for determining whether an inmate has a liberty interest in a parole date or time served credits was clearly established by the time of the events in question. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Kentucky Dept. of Corrections*, 490 U.S. at 462–63, 109 S.Ct. at 1909–10. As noted earlier, the Oregon statutes and regulations clearly establish a liberty interest in both time served credits, and also to a parole release date and a prison term *once those have been established by the parole board.* That is an entirely different question from whether the inmate is entitled to parole in the first place.

■ Oregon law clearly established that the Sheriff had a duty to transmit CTS certifications, and the EOCI Records Department had a duty to promptly forward those certificates to the Parole Board once received. Qualified immunity is not available when an official omits to perform an act which he is legally required to do and that omission causes the deprivation of an individual's rights. *Alexander*, 916 F.2d at 1396. Moreover, by 1989–90 it was clearly established in the Ninth Circuit that prison officials had a duty to investigate an inmate's complaints that he was being wrongly held. *Id.* at 1398 (finding the right was clearly established in 1985).

■ Although plaintiff has allegedly been wronged by the bureaucracy as a whole, the more difficult question is whether any defendant personally violated plaintiff's clearly established rights. Plaintiff sent defendant Abbott a "kite" asking to speak with her as soon as possible. She responded that she was busy and asked plaintiff to put his questions in writing and she would try to respond to them. That one act did not violate plaintiff's clearly established rights. Plaintiff asked defendant Lewis to expedite his release. She responded that she could do nothing until the Parole Board acted. That was true. *See* OAR 291–100–024 (1990) (inmate may be released only on orders of court, governor, parole board, etc.). Perhaps she should have pressured the Board to expedite its work, but on these facts I can't say she did anything wrong.

■ Defendant Toronto may have waited a few days to open her mail, but that is not enough to hold her liable, particularly when she did not know there were any urgent letters waiting. Once she learned about the CTS certification, Toronto promptly communicated that information to the Parole Board, as required by law. She might have followed up more quickly, but when several weeks passed and she hadn't heard from the Board, she sent a teletype reminding them plaintiff was still waiting to be released. Toronto did not violate plaintiff's clearly established rights. Plaintiff has never formally identified John Doe 2, but it is probably Mr. Beebe. There is no evidence he violated plaintiff's rights.

■ Defendants Faatz and John Does 3–10, members of the Board of Parole, are also entitled to qualified immunity. In retrospect, the Board should have immediately recalculated plaintiff's release date, since that was a purely ministerial matter. However, the Board did not know that, since an apparently valid regulation suggested otherwise. I am not persuaded by Faatz's argument that the delay in processing the CTS certification was reasonable because the Board needed that time to hold a hearing. In fact, the change was processed administratively and there apparently was no hearing. Still, I cannot find that the members of the Board violated plaintiff's clearly established rights.

■ Sheriff Prinslow had a legal duty to promptly transmit the CTS certification. That was not done. He delegated his responsibilities to other employees, but alleged-

ly failed to supervise those employees to ensure that duty was performed. A jury could find he was aware of this legal duty, and the consequences of its non-performance. Prinslow's affidavits also states that "I believe the system [for processing CTS certifications] has worked very well in that I have received very few complaints." That is a backhand way of saying he was aware of some complaints. It is unclear what steps, if any, Prinslow took to correct these problems, nor has Prinslow explained why plaintiff's CTS certificate was not timely furnished, either initially or upon plaintiff's subsequent inquiries. If the jury believes plaintiff's version of events, it could find Sheriff Prinslow was indifferent towards the potential violation of plaintiff's constitutional rights. *Cf. Oviatt,* 954 F.2d 1470 (deliberate indifference found where jail officials forgot about prisoner, and he spent 114 days waiting for arraignment; Sheriff was aware that mistakes like this occur "from time to time" (about twice a year, on average) but established no procedures to prevent those occurrences because the mistake were infrequent, and the Sheriff erroneously assumed the inmate or his relatives or lawyer would quickly call the omission to the jail's attention).

The same holds true of "John Doe 1," who is apparently Wendy Anton Guest.[13] Guest allegedly failed to process plaintiff's CTS request for almost two months. Depending upon the facts elicited at trial, her conduct could be construed as deliberate indifference in light of the obvious importance of a certification request. A reasonable official would have known she had a duty to promptly process such requests, and that failure to do so could result in plaintiff wrongly serving additional time in prison.

### 4. *Negligence:*

Plaintiff has asserted state law negligence claims against Prinslow and John Doe 1. Supplemental jurisdiction is now governed by the standards in 28 U.S.C. § 1367. *Executive Software North America, Inc. v. United States District Court,* 15 F.3d 1484 (9th Cir.1994). Section 1367 creates a pre-

sumption that supplemental jurisdiction should be asserted. The four grounds upon which the court may refuse jurisdiction are enumerated in § 1367(c). None of those grounds apply here. Even if the federal claims are ultimately dismissed, I would retain jurisdiction over the pendent claims in light of the amount of time already devoted to this case by both the Magistrate Judge and district court.

As for the merits of the negligence claim, a jury could find the county defendants had a duty, negligently breached it, and plaintiff was injured as a result. *See Gage v. Maass,* 306 Or. 196, 204 n. 9, 759 P.2d 1049 (1988) (inmate might have an action for damages against a sheriff who failed to perform his duty to furnish the ODOC with a CTS certification).

### CONCLUSION

I decline to adopt the Magistrate Judge's Findings and Recommendations. Instead, I grant the state defendant's motion for qualified immunity (# 23) and dismiss the claims against defendants Abbott, Lewis, Toronto, Faatz, and Does 2 through 10, on grounds that while plaintiff was deprived of a liberty interest, and his unlawful detention may also have been contrary to the Eighth Amendment, a reasonable public official in 1990 would not have known that the actions taken by these defendants violated plaintiff's clearly established constitutional rights. I deny the county defendants' motion for summary judgment (# 35) as to defendants Prinslow and "John Doe 1," and retain jurisdiction over the pendent claims.

---

13. Plaintiff may not continue to prosecute a § 1983 claim against a John Doe. Plaintiff must

substitute the true name of this defendant and effect service at the earliest opportunity.