Clay E. RUSSELL, Plaintiff,

v.

William L. LAZAR and Jim R. Plaint, Defendants.

No. 01–C–1254.

United States District Court, E.D. Wisconsin.

Jan. 27, 2004.

Clay Russell, Madison, WI, Pro se.

Philip Peterson, Madison, WI, for Defendants.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Clay E. Russell brings this pro se action under 42 U.S.C. § 1983 alleging that defendants William L. Lazar and Jim R. Plaint, Wisconsin correctional officials, violated his rights under the Eighth and Fourteenth Amendments by miscalculating his prison sentence and thereby causing him to be confined for sixty-five days beyond his mandatory release ("MR") date. Although the complaint is somewhat unclear, plaintiff appears to allege that from June 4 to August 9, 2000 he was unlawfully imprisoned because defendants miscalculated his MR date. He alleges that he advised defendants of their mistake and asked them to recalculate his sentence, but that they deliberately ignored his requests. Pursuant to Fed.R.Civ.P. 12(b)(6), defendants now move to dismiss on the ground that plaintiff fails to state a claim and, alternatively, that they are entitled to qualified immunity.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997). Dismissal of an action under such a motion is warranted only if it is clear that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts; it is that even assuming all of his facts are accurate, he has no legal claim. *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999). In ruling on such a motion, the court must assume that all of the facts alleged in the complaint are true and draw all reasonable inferences from those facts in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1326 (7th Cir.1990). Because the plaintiff in this case is proceeding pro se, I am obliged to give his allegations, however

inartfully pleaded, a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

■ To state a claim under § 1983, the plaintiff must allege that the defendants deprived him of a right secured by the Constitution or laws of the United States and that the defendants acted under color of state law. *Bublitz v. Cottey*, 327 F.3d 485, 488 (7th Cir.2003). In the present case, defendants do not dispute that they acted under color of state law but argue that plaintiff fails to allege facts from which it could be inferred that he was deprived of a constitutional right and that, even if he does, they are entitled to qualified immunity.

## I. DEPRIVATION OF CONSTITUTIONAL RIGHT

### A. Eighth Amendment

■ Incarcerating a prisoner beyond the termination of his sentence without penological justification violates the Eighth Amendment prohibition of cruel and unusual punishment when it is the product of deliberate indifference. *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir.2001) (cit-

ing *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir.1993); *Sample v. Diecks*, 885 F.2d 1099, 1108–09 (3d Cir.1989); *Haygood v. Younger*, 769 F.2d 1350, 1354–55 (9th Cir. 1985) (en banc)).[1] To establish § 1983 liability for incarceration without penological justification, a plaintiff must establish three elements. *Moore*, 986 F.2d at 686. First, he must show that a prison official knew of his problem and thus of the risk that he was being or would be subjected to unwarranted punishment. Second, the plaintiff must show either that the official failed to act or took action that was ineffectual under the circumstances, thereby indicating that he was deliberately indifferent to the plaintiff's plight. Finally, the plaintiff must show a causal connection between the official's conduct and the unjustified detention. *Id.; Sample*, 885 F.2d at 1110.

■ In the present case, the complaint, liberally construed, alleges each of the necessary elements. Plaintiff alleges that he informed defendants that his sentence had been miscalculated and requested a recalculation but that they deliberately ignored his request, thus causing him to be unjustifiably detained. Therefore, plaintiff states a claim under the Eighth Amendment.[2]

---

**1.** The Fifth Circuit has held that, because the Eighth Amendment applies when a prisoner is challenging the *conditions* rather than the *fact* of confinement, extended incarceration cases should be analyzed under the Fourteenth Amendment, not the Eighth Amendment. *Jones v. City of Jackson*, 203 F.3d 875, 880–81 (5th Cir.2000). However, the Fifth Circuit's Fourteenth Amendment analysis is basically the same as other circuits' Eighth Amendment analysis. *See McCurry v. Moore*, 242 F.Supp.2d 1167, 1180 (N.D.Fla.2002). Further, *Jones* did not involve a convicted prisoner but rather someone arrested on a bench warrant and held on a detainer and alleged probation violation. The Due Process Clause rather than the Eighth Amendment applies to § 1983 claims brought by pre-trial detainees. *Washington v. LaPorte County Sheriff's Dep't,*

306 F.3d 515, 517 (7th Cir.2002) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

**2.** Defendants argue that plaintiff does not state a viable Eighth Amendment claim because he alleges in part that "Defendants [sic] negligence caused Plaintiff wrongful imprisonment" (Compl.¶ IV.B), and state officials are not liable for their negligence under § 1983. While state officials are not liable for mere negligence, *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), plaintiff also alleges that defendants "deliberately ignored" his requests to have his sentence recalculated. (Compl.¶ IV.A.) Thus, liberally construed, the complaint states an Eighth Amendment claim.

## B. Fourteenth Amendment

■ Plaintiff also attempts to state a Fourteenth Amendment procedural due process claim.[3] Procedural due process claims require a two-step analysis. *Luellen v. City of East Chicago,* 350 F.3d 604, 613 (7th Cir.2003). The first step is to determine whether the plaintiff has been deprived of a protected liberty or property interest; the second step is to determine what process is due. *Id.* In the present case, it is undisputed that plaintiff had a protected liberty interest in being released on his MR date and that the defendants deprived him of that interest. *See McKinney v. George,* 726 F.2d 1183, 1189 (7th Cir.1984). Thus, the only question is whether he received due process.

In *Toney–El v. Franzen,* the Seventh Circuit considered what process is due a prisoner who has been incarcerated beyond his release date due to the miscalculation of good time credits. 777 F.2d at 1227–29. The court held that the process

due varies depending on whether the prisoner alleges that he was deprived of his liberty because state officials failed to properly administer the state's procedures or because the state's procedures were constitutionally inadequate to begin with. *Id.* at 1227–28. If the prisoner alleges that the failure of state officials to properly administer the state's procedures caused the deprivation, the court must consider the availability and adequacy of postdeprivation remedies under state law before concluding that due process was violated. *Id.* (citing *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). However, if the prisoner alleges that the state maintained insufficient predeprivation procedures, the court need not consider whether adequate postdeprivation procedures were available. *Id.* at 1228. In that situation, the question is whether the prisoner received "an opportunity to be heard at a meaningful time and in a meaningful manner *before* being denied his liberty." *Id.* (internal quotation marks omitted, emphasis added).[4]

**3.** Plaintiff may have intended to state a substantive due process claim as well. However, the Seventh Circuit has held that prisoners have "no substantive due process right to an early release from prison." *Toney–El v. Franzen,* 777 F.2d 1224, 1227 (7th Cir.1985). In *Toney–El,* the prisoner was incarcerated beyond his release date because the defendants miscalculated his good time credits. *Id.* at 1225–26. In the present case, plaintiff was incarcerated beyond his MR date, which under Wisconsin law is two-thirds of the sentence. Wis. Stat. § 302.11(1) (2001–02). Leaving aside the question of whether release on an MR date constitutes an "early release from prison" as the Seventh Circuit used the phrase in *Toney–El,* even if plaintiff had a substantive due process right to be released on his MR date, such a right would be identical to his Eighth Amendment right not to be incarcerated beyond the expiration of his sentence. *See Armstrong v. Squadrito,* 152 F.3d 564, 576–77 (7th Cir.1998) (applying deliberate indifference standard to pretrial detainee's substantive due process claim alleging extended incarceration). Thus, because plaintiff alleges that defendants violated the Eighth

Amendment, I need not consider whether he also has a substantive due process right to be released on his MR date.

**4.** It is unclear whether *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) casts doubt on the hard distinction drawn in *Toney–El* between challenges to a state's procedures and challenges to mere mistakes in executing those procedures. In *Zinermon,* the Court considered the § 1983 claim of a man who alleged that he had been wrongfully committed to a mental hospital. The plaintiff had signed a "voluntary" admission form but, due to the extent of his illness, was likely incompetent to have done so. The defendant state officials defended against his due process claim by invoking *Parratt,* arguing that any mistakes made by the admitting officials were random and unauthorized, and that plaintiff had available tort remedies. The Court declined to apply *Parratt* even though the plaintiff did not challenge the facial validity of the state's commitment procedures and conceded the existence of postdeprivation remedies under state law for unlawful confinement. *Id.* at 117 n. 3, 130 n. 15, 110 S.Ct. 975. The Court held that because mistakes of

The plaintiff in *Toney–El* alleged that he was deprived of due process both by the mistakes made by Illinois officials and because of the state's lack of adequate procedures for addressing the claims of prisoners contesting the calculation of their release dates. The court held that the plaintiff's due process claim alleging mistakes by state officials failed because Illinois provided adequate postdeprivation remedies, such as a cause of action for false imprisonment. *Id.* The court also rejected the plaintiff's challenge to Illinois's predeprivation procedures, holding that the state's informal written procedure for challenging sentence calculations provided all the process that was due. *Id.* at 1228–29.

■ In the present case, it is unclear from the complaint whether plaintiff alleges that he was incarcerated beyond his MR date only because of mistakes made by state officials or whether he also challenges the sufficiency of the state's procedures for addressing prisoner requests for verification of MR dates. Taking all inferences in his favor, I conclude that plaintiff alleges that he was deprived of liberty both because of officials' mistakes and because of the inadequacy of the state's procedures. To the extent that plaintiff's claim is based solely on officials' mistakes,

it likely fails because of the availability of adequate state postdeprivation remedies, such as a false imprisonment action.[5] *See Lane v. Collins,* 29 Wis.2d 66, 138 N.W.2d 264 (1965).

However, to the extent that plaintiff challenges the state's procedures for addressing requests for sentence recalculations, he states a viable due process claim. Plaintiff alleges that defendants ignored his requests to recalculate his sentence. If defendants had no procedures in place for addressing such requests and for that reason ignored him, plaintiff could prevail on his procedural due process claim. *See Young v. Sheahan,* No. 99–C–3791, 1999 WL 1044935, at *2 (N.D.Ill. Nov. 10, 1999) (distinguishing *Toney–El* and denying motion to dismiss where plaintiff alleged that defendant had practice of ignoring claims of mistaken detention); *see also Sample,* 885 F.2d at 1115–16 (holding that due process requires prison to "meaningfully and expeditiously" consider inmate's claim that his sentence has been miscalculated); *Haygood,* 769 F.2d at 1355–58 (holding that state must provide inmate who alleges that his sentence was miscalculated with "meaningful hearing"). *Toney–El* is not to the contrary because in that case the court held that Illinois's informal written review procedure for dealing with challenges to sentence calculations was adequate to satisfy due process. *Id.* at 1229.[6] In the

---

the sort that the plaintiff complained of were not unforeseeable given the broad discretion delegated to state officials, and because predeprivation process could have been afforded, dismissal under *Parratt* was inappropriate. *Id.* at 136–38, 110 S.Ct. 975. *Zinermon* thus suggests that where the defendants who allegedly deprived the plaintiff of liberty are the very officials responsible for providing predeprivation process, and where the defendants acted pursuant to a broad grant of discretion, a due process claim may lie notwithstanding the facial validity of the state's procedures and the availability of adequate postdeprivation remedies.

5. However, at this early stage of litigation, it would be inappropriate to dismiss any aspect

of plaintiff's due process claim. Consistent with *Zinermon,* plaintiff may be able to demonstrate that defendants were responsible for providing predeprivation process, and that they exercised a broad grant of discretion in a manner that deprived him of liberty without due process.

6. I note that in *Toney–El* the Seventh Circuit explicitly rejected *Haygood*'s requirement that the state provide an inmate who alleged that his sentence has been miscalculated with a full-blown adversarial hearing. 777 F.2d at 1229. However, the Seventh Circuit did not suggest that a state could ignore a request for recalculation of a sentence. On the contrary, by holding that the state's informal written

present case, I cannot determine from the complaint whether defendants had a comparable procedure. Thus, construing the complaint liberally, plaintiff states a valid procedural due process claim.[7]

## II. QUALIFIED IMMUNITY

■ Defendants argue that even if the complaint states claims under the Eighth and Fourteenth Amendments, they are entitled to qualified immunity. However, because the qualified immunity determination usually depends on the facts of a case and a plaintiff is not required to plead facts that anticipate and overcome qualified immunity, dismissal on the basis of qualified immunity at the pleading stage is usually inappropriate. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir.2001); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir.2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal [because] when defendants do assert immunity it is ·essential to consider facts in addition to those in the complaint."). Thus, a complaint should not be dismissed based on qualified immunity unless it is clear that the plaintiff could prove no facts sufficient to defeat the defense. With this principle in mind, I turn to the qualified immunity issue.

■ Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982). The court applies a two step sequential test for determining whether qualified immunity applies. The initial inquiry is whether the facts, taken in the light most favorable to the party asserting the injury, show that the defendants violated a constitutional right or rights. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If there was no violation, there is no need for further inquiry. *Id.* In the present case I have already determined that the complaint sufficiently alleges that defendants violated plaintiff's Eighth and Fourteenth Amendment rights.

■ The second sequential step is to ask whether the right was "clearly established" at the time of the alleged violation. *Id.* "The relevant, dispositive inquiry in determining whether the right is clearly established is whether it would be clear to a reasonable [state official] that his conduct was unlawful in the situation· he confronted." *Id.* at 202, 121 S.Ct. 2151. A right is clearly established when its contours are " 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Jacobs*, 215 F.3d at 766 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

■ To determine whether a right is clearly established, the court should first look to Supreme Court caselaw, then circuit precedent. In the absence of controlling precedent, the court may broaden its "survey to include all relevant caselaw in order to determine 'whether there was such a clear trend in the caselaw that we

---

review procedure provided adequate process, the court recognized that a state must afford some process and may not ignore an inmate's request. *Id.; see also Sheahan*, 1999 WL 1044935, at *2.

7. To prevail on this claim, plaintiff must establish that the named defendants were responsible for ensuring that inmates received adequate predeprivation process. *See Sample*, 885 F.2d at 1116. Construing the complaint in plaintiff's favor, he alleges that defendants had this responsibility.

can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.' " *Id.* at 767, 215 F.3d 758 (quoting *Cleveland–Perdue v. Brutsche,* 881 F.2d 427, 431 (7th Cir.1989)). However, the plaintiff need not present a case directly on point in order to defeat qualified immunity. *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

Thus, I must determine whether, in the summer of 2000, it would have been apparent to reasonable state officials: (1) that they could not be deliberately indifferent to the risk of incarcerating an inmate beyond his MR date, and (2) that they had to have procedures in place for addressing an inmate's request to recalculate his sentence. Taking plaintiff's allegations and the inferences therefrom in his favor, I conclude that defendants are not entitled to qualified immunity at this stage of the litigation.

## A. Eighth Amendment

■ Although, as of the summer of 2000, no Supreme Court or Seventh Circuit case expressly stated that an inmate had an Eighth Amendment right to be released on his MR date, there was "such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Jacobs,* 215 F.3d at 767. Indeed, in 2001, the Seventh Circuit recognized a right to be released at the lawful conclusion of a prison sentence and suggested that this right

was probably clearly established as early as the late 1980s and early 1990s. *Campbell,* 256 F.3d at 700.[8]

In any event, by 2000, there was a clear trend in the caselaw to the effect that state officials violate an inmate's Eighth Amendment rights when they are deliberately indifferent to the risk that he may be incarcerated beyond his release date. *See Moore,* 986 F.2d at 686; *Alexander v. Perrill,* 916 F.2d 1392, 1398–99 (9th Cir.1990); *Sample,* 885 F.2d at 1108; *Haygood,* 769 F.2d at 1354–55; *Douglas v. Murphy,* 6 F.Supp.2d 430, 431–32 (E.D.Pa.1998), *aff'd,* 248 F.3d 1129 (3d Cir.2000) (table); *Plumb v. Prinslow,* 847 F.Supp. 1509, 1521 (D.Or. 1994); *Baldwin v. Erickson,* No. 92–2437, 1993 WL 387898, at *4 (E.D.Pa. Sept. 28, 1993); *Lundblade v. Franzen,* 631 F.Supp. 214, 218 (N.D.Ill.1986); *see also* 24 C.J.S. *Criminal Law* § 1599, at 199 (1989). In fact, several courts have already concluded that the right at issue was clearly established by the summer of 2000. *See Alexander,* 916 F.2d at 1397–99; *McCurry,* 242 F.Supp.2d at 1181–82; *Plumb,* 847 F.Supp. at 1521–23.

However, defendants point to the Fifth Circuit's decision that a prisoner has no right under the Eighth Amendment to be free from incarceration beyond the expiration of his sentence. *See Jones,* 203 F.3d at 880–81. *Jones,* however, recognized such a right but characterized it as a due process rather than an Eighth Amendment right. *Id.* at 880–81. And, at least one court has suggested that there is no difference between the right recognized by the Fifth Circuit and the right characterized by other circuits as an Eighth Amendment

---

8. Defendants claim that *Campbell* held that a prisoner's Eighth Amendment right to be free from incarceration beyond the expiration of his sentence was not clearly established. However, citing cases from other circuits, the Seventh Circuit in *Campbell* recognized that such a right was probably clearly established, 256 F.3d at 700, but that the underlying *state* law concerning when the plaintiff-prisoner was entitled to be released was not. 256 F.3d at 700–01. In the present case, defendants concede that Wisconsin law clearly required that they release plaintiff on his MR date.

right. *McCurry,* 242 F.Supp.2d at 1180. Finally, even if the Fifth Circuit's approach conflicts with that of other circuits, the existence of one contrary decision does not mean that a particular right is not clearly established or that there is not a clear trend in the caselaw.[9] *See Burgess v. Lowery,* 201 F.3d 942, 946 (7th Cir.2000) (holding that right not to be strip searched without reasonable suspicion was clearly established even though there was no controlling Supreme Court or circuit precedent and one jurisdiction had held that there was no such right).

Thus, I conclude that in the summer of 2000 it was clearly established that the Eighth Amendment prohibited prison officials from incarcerating an inmate beyond his release date if such incarceration was the result of the officials' deliberate indifference.

**B. Fourteenth Amendment**

 I likewise conclude that in the summer of 2000 it was clearly established that to comply with due process prison officials could not ignore an inmate's request to recalculate his sentence and had to have in place some procedure to address such requests. *See Sheahan,* 1999 WL 1044935, at *2 (holding that plaintiff stated viable due process claim when he alleged that in 1998 defendant had practice of ignoring claims of mistaken detention). Although the right to a formal review procedure was not clearly established in this circuit, *compare Haygood,* 769 F.2d at 1355–58, *with Toney–El,* 777 F.2d at 1229, the cases in this and other circuits clearly recognized that prisoners had a protected liberty interest in being timely released and had to be afforded *some* process when they alleged that their sentences had been miscalculated. *Sample,* 885 F.2d at 1115–

16 (holding that prisoner had due process right to have his claim that his release date was miscalculated "meaningfully and expeditiously considered"); *Toney–El,* 777 F.2d at 1228–29 (implicitly holding that prison officials must conduct informal written review when prisoner challenges sentence calculation); *Plumb,* 847 F.Supp. at 1516–21 (holding that prisoner had protected liberty interest in release date and that plaintiff should have opportunity to show that existing predeprivation procedures did not comport with due process).

In the present case, taking the inferences in plaintiff's favor, he alleges that defendants ignored his requests to recalculate his sentence and had no procedures in place to address such requests. Therefore, defendants are not entitled to qualified immunity in connection with plaintiff's due process claim at this point in the litigation.

**III. CONCLUSION**

**THEREFORE, IT IS ORDERED** that defendants' motion to dismiss (docket # 23) is **DENIED.**

Defendants also moved for a protective order, requesting that I stay discovery pending resolution of their motion to dismiss. Because the motion to dismiss has now been denied, **IT IS FURTHER ORDERED** that defendants' motion for a protective order (docket # 43) is **DENIED** as **MOOT.**

---

9. And, as noted, *Jones* is distinguishable because it involved a detainee rather than a convicted prisoner.